## CAPITOL GREYHOUND LINES ᴇᴛ ᴀʟ. *v.* BRICE, COMMISSIONER OF MOTOR VEHICLES.

No. 118.  Argued December 5, 1949.—Decided May 15, 1950.

*Clarence W. Miles* argued the cause for appellants. With him on the brief was *Benjamin C. Howard.*

*Hall Hammond,* Attorney General of Maryland, argued the cause for appellee. With him on the brief was *Ward B. Coe, Jr.,* Assistant Attorney General.

Mr. Justice Black delivered the opinion of the Court.

The basic question presented is whether one of two Maryland taxes imposed on all common carriers transporting passengers over Maryland roads can be exacted from interstate carriers consistently with the commerce clause of the Federal Constitution. A subsidiary contention impliedly raised by carrier appellants here is that the tax is invalid as applied to them. The Supreme Court of Maryland upheld the tax, —— Md. ——, 64 A. 2d 284. The case is here on appeal under 28 U. S. C. § 1257 (2).

The tax challenged by appellants is prescribed by § 25A of Art. 66½ of the Annotated Code of Maryland, 1947 Cum. Supp. In the language of appellants that section imposes "a tax of 2% upon the fair market value of motor vehicles used in interstate commerce as a condition precedent to the issuance of certificates of title thereto (the issuance of such certificates being a further condition precedent to the registration and operation of such vehicles in the State of Maryland) . . . ." [1]

*First.* Appellants do not contend that as interstate carriers they are wholly exempt from state taxation. This Court and others have consistently upheld taxes on inter-

---

[1] Maryland also imposes a tax for each passenger seat of one-thirtieth of a cent per mile traveled on Maryland roads. Maryland Ann. Code (1947 Cum. Supp.), Art. 81, § 218. Prior to 1947 the mileage tax applied both to interstate and intrastate carriers; the 2% "titling tax" here challenged applied to intrastate carriers only. At that time the state legislature made significant changes. It made the titling tax applicable to interstate as well as to intrastate carriers and reduced the seat-mile tax from one-eighteenth cent to one-thirtieth cent. Chapters 560 and 326, 1947 Laws of the General Assembly of Maryland.

state carriers to compensate a state fairly for the privilege of using its roads or for the cost of administering state traffic regulations.[2]   Courts have invoked the commerce clause to invalidate state taxes on interstate carriers only upon finding that: (1) the tax discriminated against interstate commerce in favor of intrastate commerce; (2) the tax was imposed on the privilege of doing an interstate business as distinguished from a tax exacting contributions for road construction and maintenance or for administration of road laws; or (3) the amount of the tax exceeded fair compensation to the state.[3]   This Maryland tax applies to interstate and intrastate commerce without discrimination.   The tax proceeds are used by Maryland wholly for road purposes, and the State Supreme Court held that the tax was imposed for the privilege of road use.   And neither in the Maryland courts nor here have appellants specifically charged that the amount of taxes imposed on carriers will always be in excess of fair compensation.   Their challenge is leveled against the formula, not the amount.

The taxes upheld have taken many forms.   Examples are taxes based on mileage, chassis weight, tonnage-capacity, or horsepower, singly or in combination—a list which does not begin to exhaust the innumerable factors bearing on the fairness of compensation by each carrier to a state.[4]   The difficulty in gearing taxes to these factors was recognized by this Court as early as *Kane* v. *New Jersey*, 242 U. S. 160, 168, where it said that so long as fees are reasonable in amount "it is clearly within the discretion of the State to determine whether the compen-

---

[2] See cases collected in Notes, 75 L. Ed. 953 and 92 L. Ed. 109.

[3] *Sprout* v. *South Bend*, 277 U. S. 163; *Interstate Transit, Inc.* v. *Lindsey*, 283 U. S. 183; *Ingels* v. *Morf*, 300 U. S. 290.   And see case collections cited in note 2, *supra*.

[4] For examples of the many factors on which taxes have been hinged, see Note, 92 L. Ed. 109, 119–123.

sation for the use of its highways by automobiles shall be determined by way of a fee, payable annually or semi-annually, or by a toll based on mileage or otherwise." [5] Later, in rejecting contentions that the validity of taxes must be determined by formula rather than result, the Court held that a flat fee on the privilege of using state highways "is not a forbidden burden on interstate commerce" unless "unreasonable in amount." *Morf* v. *Bingaman,* 298 U. S. 407, 412. See also *Aero Transit Co.* v. *Comm'rs,* 332 U. S. 495, and annotation thereto, 92 L. Ed. 109, 119–120. Yet clearly a flat fee is not geared to mileage, weight or any other factor relevant in considering the fairness of compensation for road use. Thus, unless we are to depart from prior decisions, the Maryland tax based on the cost of the vehicles should be judged by its result, not its formula, and must stand unless proven to be unreasonable in amount for the privilege granted.

Appellants, however, in effect urge that we make an exception to the general rule and strike down this tax formula regardless of whether the amount of the tax is within the limits of fair compensation. No tax precisely like this has previously been before us. Appellants argue that a tax on vehicle value should be forbidden by the commerce clause because it varies for each carrier without relation to road use. In support of this contention, they point to the facts shown in this record. Each of the appellant carriers, according to admitted al-

---

[5] This statement was made in a case where flat license fees were based on a vehicle's rated horsepower. In that case the person held liable for the state tax was a nonresident driving through the state. By citation of this case we do not mean to imply that the constitutional rule relating to a state's power to collect for the use of its roads by occasional travelers is as broad as where road use by carriers is involved. See *Aero Transit Co.* v. *Comm'rs,* 332 U. S. 495, 503. See also the opinions in *Edwards* v. *California,* 314 U. S. 160.

legations, bought a new passenger-carrying vehicle and declared a purpose to use its vehicle on one of its Maryland routes. The Maryland portions of these three routes are 9, 41 and 64 miles respectively. The state taxes computed on the fair market value of each vehicle are $505.17, $580 and $372.55, respectively. This showing does indicate that the title tax falls short of achieving uniformity among carriers in relation to road use. Moreover, as argued, it may well be unwise to subject carriers to the monetary temptation incident to the application of a tax that hits a carrier only when it purchases a bus. But that is not our issue. And it should be noted that the total charge of Maryland for the privilege of using its roads will not show the same disparity among carriers. For Maryland also charges a mileage tax,[6] and this tax added to the title tax is what Maryland actually charges for its road privileges. Thus the total charge as among carriers does vary substantially with the mileage traveled.

We recognize that in the absence of congressional action this Court has prescribed the rules which determine the power of states to tax interstate traffic, and therefore should alter these rules if necessary to protect interstate commerce from obstructive barriers. But with full appreciation of congenital infirmities of the Maryland formula—and indeed of any formula in this field—as well as of our present rules to test its validity, we are by no means sure that the remedy suggested by appellants would not bring about greater ills. Complete fairness would require that a state tax formula vary with every factor affecting appropriate compensation for road use. These factors, like those relevant in considering the constitutionality of other state taxes, are so countless that we must be content with "rough approximation rather than precision." *Harvester Co.* v. *Evatt*, 329 U. S. 416, 422–423. Each additional factor adds to administrative bur-

---

[6] See note 1, *supra*.

dens of enforcement,[7] which fall alike on taxpayers and government. We have recognized that such burdens may be sufficient to justify states in ignoring even such a key factor as mileage, although the result may be a tax which on its face appears to bear with unequal weight upon different carriers. *Aero Transit Co.* v. *Georgia Comm'n,* 295 U. S. 285, 289. Upon this type of reasoning rests our general rule that taxes like that of Maryland here are valid unless the amount is shown to be in excess of fair compensation for the privilege of using state roads.

Our adherence to existing rules does not mean that any group of carriers is remediless if the total Maryland taxes are out of line with fair compensation due to Maryland. Under the rules we have previously prescribed, such carriers may challenge the taxes as applied, and upon proper proof obtain a judicial declaration of their invalidity as applied. *Ingels* v. *Morf,* 300 U. S. 290. *Cf. Clark* v. *Paul Gray, Inc.,* 306 U. S. 583.

If a new rule prohibiting taxes measured by vehicle value is to be declared, we think Congress should do it.[8]

---

[7] One example of the complexities springing from state attempts to weigh numerous factors was the Indiana tax upheld in *Eavey Co.* v. *Department of Treasury,* 216 Ind. 255, 264, 24 N. E. 2d 268, 272, which was ". . . based upon the carrying capacity, number of wheels per axle, load per axle, size of tires used, weight, and other elements described in the act, all of which bear a direct relation to the hazards of the highways."

[8] Congress has passed comprehensive legislation regulating interstate carriers in which it is declared that "Nothing in this chapter shall be construed to affect the powers of taxation of the several States . . . ." 49 U. S. C. § 302 (b). See *Brashear Freight Lines* v. *Public Serv. Comm'n,* 23 F. Supp. 865; see also *Maurer* v. *Hamilton,* 309 U. S. 598. It is interesting to note that the Interstate Commerce Commission charged with the duty of fixing rates and administering the Motor Carrier Act requires carriers to keep accounts showing the "cost of all taxes, licenses and fees assessed for the privilege of operating revenue vehicles over the highways, such as registration fees, license plate fees, . . . certificates of title fees . . . and similar items . . . ." 49 CFR, 1947 Supp., § 182.5220.

We decline to hold that this Maryland title tax law is wholly invalid however applied.

*Second.* Little need be said as to the faint contention here that the taxes actually levied against appellants are in excess of a fair compensation for the privilege of using Maryland roads. While the State Supreme Court did pass on this question, holding that appellants had failed to prove excessiveness, the assignments of error here did not specifically mention such a challenge. That court satisfactorily disposed of any question of the size of the fees in relationship to the road privileges granted. The burden of proof in this respect is on a carrier who challenges a state law. *Clark* v. *Paul Gray, Inc.,* 306 U. S. 583, 598–600. We agree with the Supreme Court of Maryland that here there is a complete and utter lack of proof sufficient to invalidate the state law on this ground. See *Dixie Ohio Co.* v. *Commission,* 306 U. S. 72, 77–78.

*Affirmed.*

Mr. Justice Douglas took no part in the consideration or decision of this case.

Mr. Justice Frankfurter, whom Mr. Justice Jackson joins, dissenting.

Once more we are called upon to subject a State tax on interstate motor traffic to the scrutiny which the Commerce Clause requires so that interstate commerce may enjoy freedom from State taxation outside of those narrow limits within which States are free to burden such commerce.

The essential facts are easily stated. By various provisions of Maryland law, an interstate motor carrier may not operate its vehicles within the State until it has registered them. As a prerequisite to registration the car-

rier must obtain a certificate of title for each vehicle. Section 25A of Article 66½ of the Annotated Code of Maryland, 1947 Cum. Supp., imposes a so-called titling tax of 2% of the "fair market value" of each motor vehicle "for the issuance of every original certificate of title . . . and . . . every subsequent certificate of title . . . in the case of sales or resales . . . ." [1] Thus, the tax does not strike at periodic intervals but only when a purchase has been made of a motor vehicle which is to be operated in whole or part on Maryland highways, whether the vehicle be new or old. The entire proceeds of the tax are devoted to road purposes.

Appellants operate interstate bus lines, in part over Maryland roads.[2] Each purchased a bus, but refused to pay the tax on the ground that § 25A was invalid under the Commerce Clause as applied to interstate carriers. They were denied certificates of title by the State and thereupon filed petitions for mandamus to secure them. The Maryland Court of Appeals sustained the levy, 64 A. 2d 284, and the case is here on appeal. 28 U. S. C. § 1257 (2).

I. Since "a State may not lay a tax on the privilege of engaging in interstate commerce," the titling tax can be

---

[1] The relevant portion of § 25A reads more fully as follows:

"In addition to the charges prescribed by this Article there is hereby levied and imposed an excise tax for the issuance of every original certificate of title for motor vehicles in this State and for the issuance of every subsequent certificate of title for motor vehicles in this State in the case of sales or resales thereof, and on and after July 1, 1947, the Department of Motor Vehicles shall collect said tax upon the issuance of every such certificate of title of a motor vehicle at the rate of two per centum of the fair market value of every motor vehicle for which such certificate of title is applied for and issued."

[2] Although two of the appellants also engage to some extent in intrastate transportation, it was not argued either here or below that this has any bearing on the case. Cf. *Sprout* v. *South Bend*, 277 U. S. 163, 170–71.

sustained only if it be a fair imposition for the use of highways constructed and maintained by Maryland or for the cost of traffic regulation. *Interstate Transit, Inc.* v. *Lindsey,* 283 U. S. 183, 185; see also *Dixie Ohio Express Co.* v. *State Revenue Comm'n,* 306 U. S. 72, 76. The right of a State to levy such a compensatory tax also as to interstate commerce for special benefits is well settled. The subjection of interstate motor traffic to such State power is only a particular application of a general principle. *Clyde Mallory Lines* v. *Alabama,* 296 U. S. 261, 267–68, and cases cited. But whether the tax now under review comes within the scope of the principle must be tested by the considerations which have guided prior adjudication. (All of the cases in which this Court has dealt with our specific problem are listed, and their relevant facts described, in an Appendix to this opinion, *post,* p. 561.) If a new principle is to be announced, it, too, must stand the test of reason in relation to the Commerce Clause.

Since the levy is upon commerce exclusively interstate, and therefore inevitably an inroad upon its normal freedom from State burdens, Maryland must justify it as a means of securing compensation for the road use which the State affords and for which it may exact a return. *Interstate Transit, Inc.* v. *Lindsey,* 283 U. S. 183. This requirement is not a close accounting responsibility, however, for the States are free to exercise a loose judgment in fixing a *quid pro quo.* Thus, tax formulas dependent on actual use of the State's highways satisfy the constitutional test, without more, since they reflect an obvious relationship between what is demanded and what is given by the State. Taxes based on miles or ton-miles have encountered no difficulty here. *Interstate Busses Corp.* v. *Blodgett,* 276 U. S. 245; *Continental Baking Co.* v. *Woodring,* 286 U. S. 352.

Again, if the State makes clear by disposition of the tax proceeds or by statutory declaration that the tax is levied to secure compensation for road use, the tax classification will be sustained if it may fairly be attributed to the privilege of road use, as distinguished from actual use. Compare *Interstate Transit, Inc.* v. *Lindsey,* 283 U. S. 183 (no allocation of proceeds) with *Clark* v. *Poor,* 274 U. S. 554 (allocation); see Appendix, *post,* p. 561. Thus, mileage may be ignored and an annual tax may be based on horsepower, *Hendrick* v. *Maryland,* 235 U. S. 610, and *Kane* v. *New Jersey,* 242 U. S. 160; on carrying capacity, *Clark* v. *Poor,* 274 U. S. 554, and *Hicklin* v. *Coney,* 290 U. S. 169; and on manufacturer's rated capacity, *Dixie Ohio Express Co.* v. *State Revenue Comm'n,* 306 U. S. 72. And the Court has upheld flat fees imposed without regard to size or weight factors. *Aero Mayflower Transit Co.* v. *Georgia Public Service Comm'n,* 295 U. S. 285; *Morf* v. *Bingaman,* 298 U. S. 407; *Clark* v. *Paul Gray, Inc.,* 306 U. S. 583; *Aero Mayflower Transit Co.* v. *Board of Railroad Comm'rs,* 332 U. S. 495.

From this body of decisions, the Court now extracts the principle that, so long as a tax is levied for highway purposes and does not formally discriminate against interstate commerce, it cannot be attacked for its tax formula or classification, but only for "excessiveness" of amount. Such a view collides with the guiding limitation upon State power announced in *Interstate Transit, Inc.* v. *Lindsey,* 283 U. S. 183, 186, that a tax intended to compensate for road use "will be sustained unless the taxpayer shows that it bears no reasonable relation to the privilege of using the highways or is discriminatory." This wary qualification was formulated for the Court by Mr. Justice Brandeis, who was most alert not to deny to States the right to make interstate commerce pay its way. Likewise, today's opinion disregards *McCarroll* v. *Dixie Greyhound*

*Lines, Inc.,* 309 U. S. 176, holding a tax invalid simply because the standard of measurement was found to be unrelated to what the State gave. In that case, the tax was declared to be imposed upon the privilege of highway use and the proceeds were allocated, and, as here, it was sought to justify the tax as levied for that purpose. There was no showing that the State was collecting sums in excess of its needs or that the carrier was being subjected to severe economic strain. The defect lay in the capricious tax formula.

In no prior case has the Court upheld a tax formula bearing no reasonable relationship to the privilege of road use. No support to the result now reached is lent by the fact that State tax formulas need not be limited to factors reflecting actual road use, such as mileage, but may be measured by the privilege of highway use extended to all alike. In a case involving a flat tax characterized as "moderate," the matter was illuminatingly put for the Court by Mr. Justice Cardozo:

> "There would be administrative difficulties in collecting on that basis [*i. e.,* mileage]. The fee is for the privilege of a use as extensive as the carrier wills that it shall be. There is nothing unreasonable or oppressive in a burden so imposed. . . . One who receives a privilege without limit is not wronged by his own refusal to enjoy it as freely as he may." *Aero Mayflower Transit Co.* v. *Georgia Public Service Comm'n,* 295 U. S. 285, 289.

Systems of taxation need not achieve the ideal. But the fact that the Constitution does not demand pure reason and is satisfied by practical reason does not justify unreason. Though a State may levy a tax based upon the privilege granted, as distinguished from its exercise, this does not sanction a tax the measure of which has no reasonable relation to the privilege. Reason precludes

the notion that a tax for a privilege may disregard the absence of a *nexus* between privilege and tax. Our decisions reflect that reason. A State naturally may deem factors of size or weight to be relevant. *Hicklin* v. *Coney*, 290 U. S. 169, 173. Since the relationship of these factors to highway construction and maintenance costs cannot be measured with even proximate accuracy, the States are not hobbled in exercising rough judgment in devising tax formulas, giving to size, weight and other relevant factors such respect as is fairly within the restraints of decency. Cf. *Clark* v. *Paul Gray, Inc.*, 306 U. S. 583, 594. And a State, with an eye to the problems of tax administration, may also reasonably conclude that under some circumstances such factors are not sufficiently significant or material to call for insistence upon impractical details, and that a flat tax is proper. In the cases involving flat taxes, the Court carefully pointed out that the classification was reasonable on the facts before it. *Morf* v. *Bingaman*, 298 U. S. 407, 410; *Clark* v. *Paul Gray, Inc.*, 306 U. S. 583, 600; *Aero Mayflower Transit Co.* v. *Board of Railroad Comm'rs*, 332 U. S. 495, 506.

Maryland's titling tax fails to meet the justifications that sustain a State's power to levy a tax on what is exclusively the carrying on of interstate commerce. Giving the State court's judgment every indulgence for supporting its validity, one cannot find any fair relationship between the tax and actual road use or the privilege of such use. The value of a vehicle is not a practical function of what the State affords. It has at best a most tenuous relationship to the privilege of using the roads, since differences in value are due to a vehicle's appointments or its age or to other factors which have no bearing on highway use. Differences in the cost of vehicles based on such factors, reflecting in large measure the financial condition of owners or their investment policies, can

hardly furnish a standard by which a return for road use may be measured.

This irrelevance in the basis of the tax is reinforced by the irrelevance of its incidence. For the tax is exacted not only on the original purchase of the vehicle but upon its subsequent transfer to a new owner. If the tax be treated as one on the vehicle, then it is attributable not to the privilege of road use but to a shift in its ownership. If the tax is deemed to be upon the owner, then it depends not upon the privilege of road use but upon the frequency of turnover of his equipment. Unlike all the comparable taxes heretofore sustained, the Maryland tax is measured by considerations extraneous to the State's right to impose it.

The Court in effect concedes this, but proceeds on the theory that the basis of such a road tax need not be intrinsically reasonable. Validity is treated as a question of dollars and cents; only the amount of the tax may be questioned. It should occasion no surprise that such a test breaks wholly new ground. Amount has of course played a part in the total context of prior decisions and it raises issues to which I shall shortly advert. But a test of amount has never been regarded as in itself a substitute for a reasonable tax classification. While novelty of doctrine does not prove unconstitutionality, neither does it establish constitutionality. If no prior decision gives any warrant for determining the validity of a State tax on commerce going through it merely by the size of the financial burden which such a tax entails, the reason is obvious enough. It would cast what is surely not a judicial function upon this Court to decide how big an amount, abstractly considered, can economically be absorbed by a carrier engaged exclusively in interstate commerce as an exaction by each State through which the carrier

passes.[3] Contrariwise, it is within the competence of judges to determine the fair relevance of criteria in achieving allowable ends. How criteria work in specific cases involves familiar practicalities in the administration of law.

No doubt difficulties are encountered by the States in formulating classifications for tax purposes which express the needed accommodation in our federalism between due regard for the special facilities afforded by States to interstate commerce for which they require compensation, and that freedom of commerce across State lines the desire for which was one of the propelling forces for the establishment of this nation and the benefits of which are one of its greatest sources of strength. Of course this Court must not unduly rein in States. Practical, not ideal, lines must be drawn, which means that within the broadest reach of policy relevant to the States' basis of taxation a wide choice must be allowed to the States of possible taxes on motor vehicles traveling in interstate commerce. *Clark* v. *Paul Gray, Inc.,* 306 U. S. 583. But simply because many tax formulas may be devised does not mean that any formula will do. Of course, the problem involves matters of degree. Drawing lines, recognition of differences of degree, is perhaps the chief characteristic of the process of constitutional adjudica-

---

[3] The Court, to be sure, does not avow that the validity of the tax depends on the relation of its size to the financial condition of the carrier. But such is the effective consequence of the considerations by which it determines validity. Once the Court abandons, as it does, an inquiry into the reasonableness of the tax basis in relation to the allowable purposes of the tax, there is nothing by which the validity of the imposition can be judged except its effect upon the finances of the carrier, unless perchance the matter is to be left wholly at large. Even in that event, the Court is bound to make *ad hoc* judgments that the particular amount a State asks of a carrier is not going to hurt it.

tion.  Difficulties in applying the test of reason do not justify abandonment of reason for the impossible task of deciding fiscal fairness to each individual carrier.

II.  Since the basis of its imposition is fatally defective, the Maryland tax cannot be saved by its amount.  But quite apart from its formula, there are serious questions relating to the amount of this tax which the Court disregards.  There is a show of fairness in the Court's suggestion that the tax will be declared bad if the amount exacted exceeds "fair compensation" to the States.  The term is not self-defining and no intimation is afforded regarding the standards by which excessiveness is to be determined.  Reference is made to *Ingels* v. *Morf,* 300 U. S. 290.  Presumably, therefore, the Court is still committed to the view that a tax may not be so high that amounts collected by the State are clearly in excess of the costs of the special facilities or regulations for which the tax is professedly levied.  Like other forms of interstate commerce, motor carriers should be required to contribute their fair share, broadly conceived, of the State's distinctive contribution for the carrying on of such commerce.  Under the guise of a special compensatory tax, however, a State may not exact more than the value of the services to be compensated.  There is no showing that the tax levied here is excessive in this sense.

But for the proper maintenance of our federal system, and more particularly for the rigorous safeguarding of the national interests in interstate commerce, it is not sufficient that a State exact no more than the value of what it gives—with all the elusiveness of determining such value.  A State must not play favorites in the operation of its taxing system between business confined within its borders and the common interests of the nation expressed through business conducted across State lines.  Such favoritism is barred whether it is overtly designed or

results from the actual operation of a taxing scheme. The Maryland tax does not obviously discriminate against interstate commerce. But a tax for the privilege of road use may impose serious disadvantages upon that commerce.

So long as a State bases its tax on a relevant measure of actual road use, obviously both interstate and intrastate carriers pay according to the facilities in fact provided by the State. But a tax levied for the privilege of using roads, and not their actual use, may, in the normal course of operations and not as a fanciful hypothesis, involve an undue burden on interstate carriers. While the privilege extended by a State is unlimited in form, and thus theoretically the same for all vehicles, whether interstate or intrastate, the intrastate vehicle can and will exercise the privilege whenever it is in operation, while the interstate vehicle must necessarily forego the privilege some of the time simply because of its interstate character, *i. e.*, because it operates in other States as well. In the general average of instances, the privilege is not as valuable to the interstate as to the intrastate carrier. And because it operates in other States there is danger—and not a fanciful danger—that the interstate carrier will be subject to the privilege taxes of several States, even though his entire use of the highways is not significantly greater than that of intrastate operators who are subject to only one privilege tax.[4]

---

[4] These dangers are heightened when the tax falls upon an interstate motor carrier authorized to operate only on a fixed route. Quite illustrative of the seriousness of the general problem are the facts concerning one of appellants here, Capitol Greyhound Lines, which is authorized by the I. C. C. to operate a bus line over a fixed route between Cincinnati, Ohio and Washington, D. C., a distance of about 496 miles, only nine of which are over Maryland's State roads. To say that Capitol has an unlimited privilege to use Mary-

When a privilege tax is relatively small in amount, and therefore to be treated as a rough equivalent for what the State may exact with due regard to administrative practicalities, the danger of an unfair burden falling upon interstate commerce remains correspondingly small. Cf. *Union Brokerage Co.* v. *Jensen,* 322 U. S. 202, 210–11. But a large privilege tax presents dangers not unlike those arising from unapportioned gross receipts taxes on interstate transportation beyond a State's power to impose. Cf. *Central Greyhound Lines, Inc.* v. *Mealey,* 334 U. S. 653. These practical considerations prevailed against a State in *Sprout* v. *South Bend,* 277 U. S. 163:

> "A flat tax, substantial in amount and the same for busses plying the streets continuously in local service and for busses making, as do many interstate busses, only a single trip daily, could hardly have been designed as a measure of the cost or value of the use of the highways." 277 U. S. at 170.[5]

That the Court has at all times been aware of this problem is demonstrated by its reiteration throughout the relevant decisions that the charge must be "reasonable in amount." See especially *Aero Mayflower Transit Co.* v. *Georgia Comm'n,* 295 U. S. 285, 289: "The fee is moderate

---

land's roads and is therefore being treated on a par with intrastate carriers is to ignore the admonition that "Regulation and commerce among the States both are practical rather than technical conceptions . . . ." *Galveston, Harrisburg and San Antonio R. Co.* v. *Texas,* 210 U. S. 217, 225.

[5] Mr. Justice Brandeis' reference to a flat tax was not intended to exclude size or weight taxes, for the *Sprout* case involved a tax based upon seating capacity. Rather, he was referring to privilege, as distinguished from mileage, taxes.

The potentiality of unfair burdens on interstate commerce was presented sharply in the *Sprout* case since the tax was levied by a municipality and there were 33 other cities along the route of the interstate carrier. See 277 U. S. at 164.

in amount," and *Aero Mayflower Transit Co.* v. *Board of Railroad Comm'rs*, 332 U. S. 495, 507: ". . . the aggregate amount of both taxes combined is less than that of taxes heretofore sustained."

The problem is inescapably one of determining how much is too much, in the total nature of the tax. Thus, it becomes important to see how the Maryland tax compares in amount with similar taxes in prior cases. This is done, not to test the tax as individually applied to appellants, but to determine whether general application of a tax of this magnitude may fairly be deemed to burden interstate commerce unduly. Examination of decided cases reveals that the largest flat tax heretofore sustained was $15 for six months or $30 per year, and the largest annual tax based upon size or weight was $75.[6] See Appendix to this opinion, *post,* p. 561. The Maryland taxes on the three appellants amounted to $372, $505 and $580, but since the Maryland tax is not annual, these amounts are not comparable to amounts previously sustained. In order to equate them, information is needed as to the number of years typical motor carriers are likely to operate such busses over Maryland roads. Even taking the assumption of the Maryland Court of Appeals, not based on any evidence in the record, that five years was a fair estimate,[7] the amounts are in excess of any sustained by

---

[6] The statute in *Clark* v. *Poor,* 274 U. S. 554, provided for a range of taxation of from $20 to $200, and that in *Hicklin* v. *Coney,* 290 U. S. 169, a range of from $30 to $400. But in neither case was evidence introduced as to the amounts to which the particular vehicle owners would be subject, and so the Court was not faced with the question whether the amount was reasonable. See Appendix, n. 3, *post,* p. 561.

[7] The Maryland court estimated the "useful life" of the busses. It should have considered the probable period of use by a typical motor carrier since the tax is imposed upon any transfer of the vehicle to another.

this Court. Therefore, even if the Court were to accept the formula of the Maryland titling tax, the case should be remanded for a finding of the anticipated period of use in order to have some basis of appraising the validity of the amount.

III. The Court's failure to treat the danger that large privilege taxes will unduly burden interstate commerce— quite apart from excessiveness in terms of State costs— is not unlike its explicit rejection of the requirement that the taxing formula be reasonably related to the purpose which alone justifies the tax. Both problems involve the resolution of conflicting interests, which in application inevitably requires nice distinctions. In this case the Court attempts to avoid difficulties through what seems to me to be an exercise in absolutes. These problems involve questions of reasonableness and degree but their determination affects the harmonious functioning of our federal system. I do not believe they can be solved by disregarding the national interest merely because a State tax levied in a particular case does not on its face appear monstrous in amount. See *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 355.

I would reverse.

Analysis of Decisions Involving State Taxation of Motor Vehicles in Interstate Commerce for State Highway Privileges[1]

| Name of case | Type of vehicle subject to tax | Basis of tax | Amount of tax involved[2] | Range of tax amounts for the entire class[2] | Legislative indication of road-use purpose | Decision |
|---|---|---|---|---|---|---|
| 1. Hendrick v. Maryland, 235 U.S. 610 (1915). | All vehicles | Horsepower | Not in issue[3] | $6–$18 | Funds allocated for road use | Valid. |
| 2. Kane v. New Jersey, 242 U.S. 160 (1916). | All vehicles | Horsepower | $10 | $3–$10 | Funds allocated for road use | Valid. |
| 3. Clark v. Poor, 274 U.S. 554 (1927). | Property carrier for hire | Manufacturer's rated carrying capacity plus regularity of routes. | Not in issue[3] | $20–$200 | Funds allocated for road use | Valid. |
| 4. Interstate Busses Corp. v. Blodgett, 276 U.S. 245 (1928). | Passenger carrier for hire | Mileage | 1¢ per mile | | Funds allocated for road use | Valid. |
| 5. Sprout v. South Bend, 277 U.S. 163 (1928). | Passenger carrier for hire | Seating capacity | $50 | $25–$75 | None | Invalid, as not being for the privilege of road use. |
| 6. Interstate Transit, Inc. v. Lindsey, 283 U.S. 183 (1931). | Passenger carrier for hire | Seating capacity | $500 | $50–$750 | None | Invalid, as not being for the privilege of road use. |
| 7. Continental Baking Co. v. Woodring, 286 U.S. 352 (1932). | Carrier of own property for sale. | Gross-ton mileage | 5/10 mill per gross-ton mile. | | Funds allocated for road use | Valid. |
| 8. Hicklin v. Coney, 290 U.S. 169 (1933). | Property carrier for hire | Carrying capacity | Not in issue[3] | $30–$400 | Funds allocated for road use | Valid. |
| 9. Aero Mayflower Transit Co. v. Georgia Public Service Comm'n, 295 U.S. 285 (1935). | Property carrier for hire | Flat tax | $25 | | Funds allocated for road use | Valid. |
| 10. Morf v. Bingaman, 298 U.S. 407 (1936). | Vehicles transported for sale on own wheels, usually in "caravans". (a) Under own power. (b) Being towed. | Flat tax | (a) $7.50. (b) $5.00. (no time limit) | | Statutory declaration, without allocation of funds. | Valid. |
| 11. Ingels v. Morf, 300 U.S. 290 (1937). | Vehicles transported for sale on own wheels, usually in "caravans." | Flat tax | $15 (for 90 days) | | Statutory declaration that purpose was reimbursement for regulatory expenses. | Invalid, as excessive in amount in relation to such expenses. |
| 12. Dixie Ohio Express Co. v. State Revenue Comm'n, 306 U.S. 72 (1939). | Property carrier for hire, having— (a) 1½-ton trucks. (b) 2-ton trucks. (c) Trailers. | (a) Manufacturer's rated capacity. (b) Same. (c) Weight. | (a) $50. (b) $75. (c) $50. | Not known | Statutory declaration without allocation of funds. | Valid. |
| 13. Clark v. Paul Gray, Inc., 306 U.S. 583 (1939). | Vehicles transported for sale on own wheels, usually in "caravans." | Flat tax | $15 (for six months) | | Statutory declaration without allocation of funds. | Valid. |
| 14. McCarroll v. Dixie Greyhound Lines, Inc., 309 U.S. 176 (1940). | Passenger carrier for hire | All gasoline over 20 gallons carried in tanks of vehicle into State for use by vehicle. | 6.5¢ per gallon | | Funds allocated for road use | Invalid, because formula bore no reasonable relation to road use. |
| 15. Aero Mayflower Transit Co. v. Board of Railroad Com'rs, 332 U.S. 495 (1947). | Property carrier for hire | Two flat taxes | $25 in total | | Statutory declaration without allocation of funds. | Valid. |

[1] The information set forth here is derived from the record, briefs, and opinion in each case.
[2] Unless otherwise indicated, all taxes expressed in terms of fixed amounts were levied on an annual basis.
[3] The attack in these cases was upon the statute as a whole, not on the specific amount of tax due and so no evidence was introduced as to such amount.