Per Curiam.

The Ohio Highway Use Tax Act, which tax is known as the axle-mile tax, levies a graduated tax upon trucks, ranging from one-half to two and one-half cents per mile for trucks having three or more axles.
The appellant attacks the imposition of the tax on three grounds.
First, it contends that the tax itself is unconstitutional.
Second, it contends that certain designated state officers, herein called the reciprocity board, had no authority to cancel reciprocity agreements with the states of Michigan and Indiana which exempted it from this tax.
Third, it maintains that the reciprocity board created by the Highway Use Tax Act has the mandatory duty of entering into reciprocity agreements with the various states.
*428 We will consider these questions in the above order.
The appellant devotes a great deal of its brief to a discus sion of the relative effects on the highways of the state of th< various types of trucks in relation to the number of axles anc of the effect of the imposition of this tax on the economy of the truckers. This argument, although interesting, is one whicl would have better been directed to the General Assembly, since this court in determining the validity of the tax must confine itself to a determination of whether the tax is discriminatory, imposes an undue burden on interstate commerce and bears a reasonable relationship to the purpose for which it was created.
The appellant contends that this tax act is discriminatory, principally on the ground that it exempts from its operation trucks with only two axles and does not evenly graduate the tax among the trucks with more than two axles, in relation to the amount of weight which may be carried per axle. It is axiomatic that the General Assembly in imposing a tax has the power to make reasonable classifications therein exempting from the tax persons who in some other way contribute their fair share to the maintenance of the operation for which the tax is imposed. In relation to the highway use tax, it was evidently the opinion of the General Assembly that the owners of trucks with only two axles carried their fair share of the cost of the operation and maintenance of highways through the imposition of the other motor vehicle taxes. It further must have determined that the relative damage to the highways increased proportionately with the number of axles. All these are questions of fact which must be determined by the General Assembly, and, its determination being neither unreasonable nor arbitrary, the court will not substitute its judgment for that of the General Assembly.
It may well be that there is not a mathematical exactness in the imposition of the tax, but this fact alone will not invalidate the tax. The United States Supreme Court, in Capitol Greyhound Lines v. Brice, Commr., 339 U. S., 542, 546, 94 L. Ed., 1053, 70 S. Ct., 806, said:
“Complete fairness would require that a state tax formula vary with every factor affecting appropriate compensation for *429 road use. These factors, like those relevant in considering the constitutionality of other state tases, are so countless that we must be content with ‘rough approximation rather than precision.’ ”
Furthermore, an examination of this tax shows that there is no discrimination as between interstate and intrastate commerce, since the same formula is applied to both forms of commerce.
The next question which must be considered in determining the constitutionality of this tax is whether it bears a reasonable relationship to the purpose for which it was created.
So long as there is a reasonable relationship between the tax and the use, we cannot on this ground say such tax is invalid.
The evident purpose of this tax is to allocate to the commercial users of the state highways their proportionate share of the cost of construction and maintenance of such highways. The tax is designated for and the proceeds go into highways. There cannot be any question that the use of heavy trucks on highways substantially increases the deterioration of such highways, and it is certainly a reasonable exercise of the taxing power to impose a special tax on the persons causing such increased deterioration.
We having determined that the tax imposed here bears a reasonable relationship to the purpose for which it was created, does not impair interstate commerce and is not discriminatory, it follows that it is a valid exercise of the taxing power.
We come now to a consideration of the power of the reciprocity board under Section 4503.37, Revised Code, to cancel the reciprocity agreement between Ohio and Michigan entered into in 1937 by such board. Looking first to the agreement, we find the following language:
“The tax accrual period for and during which such taxes and fees may be thus waived shall commence with January 1, 1937, and shall continue until December 31, 1937, and thereafter until this compact and agreement shall be modified or altered between the contracting parties, or terminated by either on written notice first to be given to the other, of intent to terminate.”
*430 Thus it is evident from the agreement itself that the parties contemplated a right of cancellation.
This right of cancellation was recognized by this court in Interstate Motor Freight System v. Bowers, Tax Commr., 164 Ohio St., 122, 128 N. E. (2d), 97, the first paragraph of the syllabus of which reads as follows:
“Where a statute creates a board of officers of a state with power and authority to enter into reciprocity agreements with the proper authorities of an adjoining state regulating the use on the roads and highways of the two states of trucks and automobiles and any other motor vehicles owned in such two adjoining states; and where such officers of the two adjoining states so authorized enter into a reciprocity agreement with respect to the operation of motor carriers operating between the two states whereby it is agreed that when outstate carriers as to either state secure reciprocity exemption cards or plates then such states shall severally waive and forego payment by their respective outstate motor carriers of license-plate taxes, including weight taxes for motor vehicles, and also mileage fees for their operation, which reciprocity agreement can be terminated by either state on written notice first to be given to the other of intent to terminate, and which agreement is not terminated but is in full force and effect between such states; and where one of such states at a later date enacts legislation whereby within its territorial limits a new and additional highway use tax is assessed on all motor carriers operating within such state, the rate of which tax is based on the number of the axles, and the amount of the tax is determined by the operation mileage of the motor carrier; the outstate motor carriers of the other state operating in interstate commerce through the state wherein such new highway use tax is imposed are exempted from such tax by reason of the terms of such reciprocity agreement still in force and effect between such states.”
Since it is clear that such agreements are subject to cancellation, we are left with only the question as to who has the right to cancel.
The appellant argues that the board itself has no such power, but makes no suggestion as to the agency in whom such power reposes.
*431 A state necessarily functions through its public officials and administrative bodies. It would be impracticable if not impossible for the General Assembly to perform all the functions nesessary for the operation of the state. Recognizing the impracticability of a legislative body to attempt to negotiate reciprocity agreements with other states, the General Assembly provided for the creation of a reciprocity board to study and determine whether reciprocity agreements should be entered into with the various states, and provided, where the board so determines, that it may enter into agreements with other states, relating to reciprocal taxing. It seems elementary that, in the absence of any provision in the statute providing for a specific manner of termination, and where administrative bodies are given power to enter into agreements, they should be able' to reserve the power, where conditions change and they determine that such agreements are no longer feasible and not to the best interest of the state, to cancel such agreements.
Thus under the circumstances of these cases it is our opinion that the reciprocity board created by Section 4503.37, Revised Code, had the power to cancel the reciprocity agreement entered into with the state of Michigan.
This brings us to a consideration of the final issue herein, that is, whether, under Section 5728.15, Revised Code, the reciprocity board has a mandatory duty to enter into reciprocity agreements with other states.
Section 5728.15, Revised Code, reads as follows:
“The Attorney General, the Tax Commissioner, and a member of the Public Utilities Commission, designated by the commission for that purpose, are hereby authorized and empowered to enter into such reciprocal contracts and agreements with the proper authorities of any state, district or territory of the United States, which levies a highway use tax in addition to motor vehicle registration fees exempting from the provisions of Sections 1 through 14 [Sections 5728.01 to 5728.14, Revised Code] of this act the owner of every motor vehicle which is duly registered in any such state, district or territory provided such owner has complied with the laws of the state, district or territory of his residence pertaining to the registration and taxation of motor vehicles and complies with such laws while *432 operating and driving such motor vehicle upon the public roadi or highways of this state, and provided further, that the owners and operators of motor vehicles registered in this state shall be exempt from all obligations pertaining to the registration anc taxation of motor vehicles in such other state, district or territory.
“When an agreement or contract has been entered into pursuant to the provisions of this section the Attorney General shall cause a copy of such agreement or contract to be filed with the Registrar of Motor Vehicles.”
It is the contention of the appellant that the General Assembly by the use of the phrase, ‘‘ authorized and empowered, ’ ’ imposed a mandatory duty on the board created by this act to enter into reciprocity agreements.
An examination of the state tax structure shows a contrary intent. It must be remembered that the effect of reciprocity agreements is to exempt certain persons from taxes, and it is fundamental that exemptions from taxation are strictly construed. The General Assembly, if it had so desired, could have, in the act itself, provided for reciprocity. This it did in the sections relating to registration and licensing, as is shown by Section 4503.36, Revised Code. The General Assembly with this in mind failed to do so in respect to the axle mile tax but instead created a reciprocity board and authorized such board to enter into agreements; thus it was clearly not the intent of the General Assembly to have an automatic reciprocity with the other states in relation to the axle mile tax but instead left it to the discretion of and for the determination of the board.
An analyzation of the problem shows how unrealistic it would be to hold that such duty is mandatory. Although we could very well instruct the board that it must enter into such agreements, such agreements require the acquiescence of another state over which we have no control. In fact, in the present cases the board did offer an amended agreement to Michigap, which Michigan refused.
Having determined that such tax is a valid exercise of the taxing power, that the reciprocity board has the power to cancel reciprocity agreements, and that there is no mandatory duty on the board created by Section 5728.15, Revised Code, to *433 require it to enter into such agreements, we affirm the decisions of the Board of Tax Appeals.

Decisions affirmed.

WEYGANDT, C. J., ZlMMERMAN, STEWART, BeLL, TaET, Matthias and Heebebt, JJ., concur.