NATIONAL TRANSPORTATION, INC., Plaintiff-Appellant, *v.* MICHAEL J. HOWLETT, Secretary of State, Defendant-Appellee.

First District (1st Division)   No. 61720

Opinion filed March 29, 1976.

James C. Hardman and Joseph Winter, both of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Charles J. Pesek, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

Plaintiff, National Transportation, Inc. (National), is a motor carrier which is based in Nebraska and authorized to operate in 40 States, including Illinois. In 1972, National first applied for prorate privileges in Illinois and paid the appropriate fees based on its prospective estimated mileage traveled in Illinois. The Secretary of State of Illinois audited plaintiff's application in 1973 and assessed an additional $10,072.59 in fees and costs for the 1972 prorate year. The reassessed fees were upheld by the hearing examiner at an administrative hearing. The circuit court affirmed the hearing examiner's decision. On appeal, plaintiff raises issues concerning the

validity and the constitutionality of the Secretary of State's interpretation of the Uniform Vehicle Registration Proration and Reciprocity Agreement (Uniform Compact).

■■ The Secretary of State has broad authority to negotiate and enter into reciprocity agreements with other States and various other jurisdictions for the purpose of granting nonresidents benefits, privileges and exemptions from taxes with respect to the operation of vehicles in Illinois in exchange for reciprocal treatment of Illinois residents. (Ill. Rev. Stat. 1975, ch. 95½, par. 3—402.) Pursuant to that authority, Illinois became a signatory to the Uniform Compact, effective for the 1963 license year. This agreement is an interstate compact despite the fact that it is not set forth in the statutes. (See F. Zimmerman and M. Wendell, The Law and Use of Interstate Compacts 8 (1961).) Fifteen States are presently members of the Uniform Compact.

The Uniform Compact was enacted for the stated purpose of prorating the registration of commercial motor carriers in each contracting State in which the interstate carrier operates on the basis of the proportion of miles operated within such State to the total fleet miles. Under section 50 of the Uniform Compact, the prorate applicant must pay fees for its first year of operations in a prorate State based on a sworn estimate of miles to be traveled in that State. In subsequent years the fees are based on the actual miles traveled in the State in the preceding year.

The following facts were adduced at the administrative hearing and stipulated to on appeal: National Transportation, Inc., is a commercial motor carrier which is based in Nebraska and commenced interstate operations in 1972. In January, 1972, National applied for prorate privileges in Illinois for the first time. In its application, the plaintiff estimated that its fleet would travel 5% of its total miles in Illinois and it paid fees based on that estimate. National also filed initial prorate applications in various other States in 1972 and paid fees in those States based on the estimate of miles traveled in those States. License fees for mileage to be traveled in noncompact States was reflected in National's prorate fees for Nebraska, the plaintiff's base State.

National applied for prorate privileges again in 1973 in Illinois and other States. Its application showed that National's vehicles had, in fact, traveled 23.5% of its total miles in Illinois in 1972. The Secretary of State conducted an audit and assessed the plaintiff an additional $9108.66 in fees based on the difference between National's estimate and the actual miles traveled. Interest in the amount of $881.93 and audit costs of $82 were also imposed.

In November, 1973, an administrative hearing was held at National's request. J. Harlin Seessengood, a reciprocity prorate auditor for the Secretary of State's office, testified that about one-half of all prorate applica-

tions are audited by the Secretary of State. Earl Searcy, who is also a reciprocity prorate auditor, testified that if the audit shows that the estimated mileage is within reasonable limits of the actual mileage, then the first-year estimates are accepted by the Secretary of State; however, if the estimates are far from the actual operations, then the first-year fees are adjusted to reflect the discrepancy.

Mr. Seessengood stated that the State also makes refunds if the applicant's estimated mileage is greater than his actual mileage. He indicated that the refunds are dispensed automatically when the audit figures are processed.

National introduced testimony and exhibits to establish that its 1972 estimated mileage figure was based on anticipated contracts with four shippers which failed to materialize. Lionel Fauss, the president of National, testified that his company is a contract carrier; thus its routes are irregular since it operates at the desire of its shippers. The Secretary of State stipulated that there had been no intentional misrepresentations as to National's estimate and that National may have had a valid reason for underestimating its 1972 Illinois mileage.

Mr. Fauss testified that National had overestimated mileage in 25 States and underestimated in 4 States, including Illinois, in 1972. National's underestimate was greater in Iowa than in Illinois. Except for Illinois, no State in which National had underestimated its operations had attempted to reassess prorate fees. National did not attempt to obtain refunds from those States where it had overestimated its mileage. Letters from officials in Nebraska, Missouri and Kansas were introduced to show that those prorate States do not reassess estimates of first-year applicants; further, in the event of overestimates, these States offer refunds, if at all, only in isolated cases.

The hearing examiner upheld the reassessment of National's 1972 prorate fees. The hearing examiner found as a matter of law that he did not have the authority to hold an Illinois statute, rule or regulation of the Secretary of State void or in violation of the State or Federal constitution. He made a finding that a good-faith estimate is not the only requirement placed on a first-time applicant in estimating first-year prorate fees, but that even if a good-faith limitation were placed on the Uniform Compact, that plaintiff failed to establish that it made a good-faith estimate. The hearing examiner also found that the reassessment does not impair but rather implements the provisions of section 60 of the Uniform Compact.

The circuit court affirmed the order of the hearing examiner without opinion.

Plaintiff claims that section 60 of the Uniform Compact does not give the Secretary of State the right to reassess fees whenever there is an unreasonable difference between the first-year estimate and actual mileage in

prorate applications. It is National's position that such an interpretation by the Secretary of State destroys the fair and orderly method of assessment set up by the Compact's provisions. The Secretary of State argues that its interpretation of section 60, which authorizes it to audit first-year estimates, carries out the primary purpose of the Compact which is to give each Compact State its fair share of revenue.

The Secretary of State contends that the Uniform Compact was set up to apportion fees among the contracting States based on miles traveled within the particular State. In order to start the system initially, estimates of the first-year operations were used as a basis for fees since fees were paid a year in advance. Small variations between the first-year estimate and the actual mileage have only a minimal adverse effect on the Compact States and do not require an adjustment. However, National's estimate varied substantially from its actual operations and thus deprived the State of considerable revenue to which it was entitled.

There are no records of the conferences of the council or State governments which formulated the Uniform Compact to aid our interpretation of the pertinent provisions. Our interpretation of the Uniform Compact must come from an analysis of the provisions themselves according to the rules of statutory construction. The disputed provisions are set forth:

"*Article 4—Proration of Registration*

*Section 50—Applicability*

All fleet pro-rata registration fees shall be based upon the mileage proportions of the fleet during the period of twelve months ending on August 31 next preceding the commencement of the registration year for which registration is sought:

Except, that mileage proportions for a fleet not operated during such period in the State where application for registration is made will be determined by the administrator upon the sworn application of the applicant showing the operations during such period in other States and the estimated operations, during the registration year for which registration is sought, in the State in which application is being made; or if no operations were conducted during such period a full statement of the proposed method of operation.

* * *

*Section 60—Errors in Registration*

If it is determined by the administrator of a contracting State, as a result of such audits or otherwise, that an improper fee has been paid his State, or errors in registration found, the administrator

may require the fleet owner to make the necessary corrections in the registration of his fleet and payment of fees."

In our construction of the provisions we are guided by the general rule that revenue laws are to be given a reasonable interpretation, but if there is any doubt in their meaning, they are to be construed strictly against the government and most favorable to the taxpayer. *City of Chicago v. Neher*, 5 Ill. App. 3d 22, 282 N.E.2d 521; 34 Ill.L.&Pr. *Statutes* §178 (1958). See *General Expressways, Inc. v. Iowa Reciprocity Board* (Iowa 1968), 163 N.W.2d 413.

■■ ■ The interpretation of a statute by an administrative agency charged with enforcement of the statute is not binding, but such construction should be and is persuasive. (*First Federal Savings & Loan Association v. Elbert*, 33 Ill. App. 3d 335, 337 N.E.2d 420.) Even under the strict standard of construction which applies to revenue laws, the interpretation of the administrative agency should be an informed source of guidance in determining the legislative intent. (*Johnson v. Marshall Field & Co.*, 57 Ill.2d 272, 312 N.E.2d 271.) Our consideration of the Secretary of State's interpretation is particularly pertinent where he has exercised his authority, granted by the legislature, to enter into reciprocity agreements with other States. (Ill. Rev. Stat. 1975, ch. 95½, par. 3—402.) The extent of the Secretary of State's powers under such a provision is to ascertain the existence and scope of reciprocal legislation and determine whether reciprocity can be granted. (*Bode v. Barrett*, 412 Ill. 204, 106 N.E.2d 521, *aff'd*, 344 U.S. 583, 97 L.Ed. 567, 73 S.Ct. 468.) Thus, the Secretary of State has been entrusted with the authority to analyze the reciprocity statutes of other States.

The aim of statutory construction is to ascertain the legislative intent by examining not only the language employed, but the objective sought to be accomplished. (*People v. Ashford*, 17 Ill. App. 3d 592, 308 N.E.2d 271.) We have examined both the language used and the objective sought to be achieved by the Uniform Compact and have found that they clearly support the Secretary of State's interpretation.

■■ The reasonable meaning of the language used in sections 50 and 60 of the Compact indicates that reassessment of first-year estimates was not excluded from the section allowing reassessment where errors occurred. Section 50 does not on its face shed light on the question of whether first-year fees can be reassessed on the basis of actual mileage. Section 60 provides for audits to determine if "improper fees" were paid or "errors in registration" were made. This provision is not explicitly limited to audits of fees subsequent to the first year. Therefore, by its language, section 60 is necessarily construed to allow audits of all fees provided for in section 50, including first-year fees.

National charges that section 50 requires first-year fees to be based on sworn estimates whereas in following years fees are predicated on the actual mileage of the preceding years; therefore, it is contrary to the language of the provision to use the actual mileage of the first year as the basis of both the first- and second-year fees. We note that if National had given a substantially accurate estimate for 1972, both its first- and second-year fees would have been based on actual miles traveled in 1972. That is how the system was intended to work. Since the fees for years after the initial application are totally independent of the first-year's fees, National's argument that the State will get adequate compensation in 1973 for miles traveled in 1972 is not an accurate portrayal of the statutory scheme. Reassessment of National's fees in 1972 is necessary to exact only what is due the State.

■■ Allowing the Secretary of State to reassess National's fees for 1972 does not necessarily mean that National will pay fees based on more than 100% of its estimated mileage. Plaintiff in this case has recourse to request funds from the various Compact States in which it overestimated its mileage in 1972. Under section 36 of the Uniform Compact one State's information obtained in an audit can be supplied to the other Compact States, thereby facilitating plaintiff's refund requests. This section provides as follows:

> "*Section 36—Cooperation*
> The administrator of each of the contracting States shall cooperate with the administrators of the others and each contracting State hereby agrees to furnish such aid and assistance to each other within its statutory authority as will aid in the proper enforcement of this agreement."

Plaintiff asserts that the Secretary of State has authority under section 60 of the Uniform Compact to reassess first-year prorate fees only if there is evidence of the applicant's fraud or bad faith. Plaintiff argues that it has shown that its 1972 estimated mileage in Illinois was reasonable and made in good faith based on negotiations with prospective clients; thus, the reassessment by the State was unauthorized. The Secretary of State admits that National did make a good-faith effort to estimate its operations within Illinois, but argues that no good-faith exception to the provision for reassessment exists.

■■ We can see no basis for the good-faith exception to reassessment which the plaintiff reads into section 60. By its terms, section 60 applies where an "improper fee" or "error in registration" has been made. The definition of "improper" is "wrong" or "incorrect" and the definition of "error" is "the difference between a computed or estimated result and the actual value." (Webster's New World Dictionary 732, 493 (College ed.

1966).) The plain meanings of those words do not connote the idea that any elements of intent are prerequisite to liability. (*People v. Dednam*, 55 Ill.2d 565, 304 N.E.2d 627.) Plaintiff's attempt to carve out a good-faith exception to section 60 is not warranted by the language of that provision. *Bovinette v. City of Mascoutah*, 55 Ill.2d 129, 302 N.E.2d 313.

In addition, the objectives of the Compact do not support plaintiff's claim. One of the primary purposes of the Uniform Compact is to provide adequate revenue to compensate the States for the use of their roads. In consideration of the fact that this is a revenue provision, there is no apparent reason for excepting good-faith errors from the requirements of section 60.

■■ The overall effect of the Compact is to reduce the hardship of multiple tax burdens on interstate carriers by charging fees based on the usage of a State's roads, rather than imposing a flat fee without regard to the number of miles traveled in the State. (See *Kane v. New Jersey*, 242 U.S. 160, 61 L.Ed. 222, 37 S.Ct. 30.) In addition, the Uniform Compact gives the State compensation for the construction and maintenance of facilities which are used by those carriers engaged in interstate commerce. Thus, although the Uniform Compact was designed to benefit interstate carriers, another purpose was to give States reasonable compensation. The Secretary of State's reassessment of National's 1972 fees enforces the Compact States' agreed-to standard of compensation.

■■ National contends that one purpose of the Compact is to give carriers an advance knowledge of their fees so that they can accurately represent their costs to the Interstate Commerce Commission which determines their approved rates from that information; and thus the carriers can plan their operations with a realistic projection of their costs. In most instances, the carriers' estimated fee will not be reassessed. Where there is a considerable deviation between estimated and actual mileage which justifies reassessment, we do not think that the interests of the carriers in knowing their fees in advance are paramount to the State's interest in receiving a fair amount of revenue. The State should not be required to bear the financial burden of a carrier's incorrect estimate where substantial revenue would be lost. Where a carrier such as National has so substantially miscalculated its future operations, its purported reliance on its payment of license fees as indicative of future costs is unreasonable. In addition, the Secretary of State reassesses first-year fees only if there is a substantial deviation between the estimated and actual mileage. Such a reassessment would not frequently occur and thus would not upset the orderly scheme set up by the Compact for determining and paying fees.

Plaintiff relies on letters from various officials in Nebraska, Missouri and Kansas to support its interpretation. The letters indicate that the assess-

ments of first-year applicants are not readjusted. In light of the informal nature of the letters as well as the fact that they are only from 3 out of 14 Compact States in which the plaintiff operated, we do not consider the letters to be persuasive support for National's position.

■■ An additional issue raised by National is that the Secretary of State's interpretation of the Uniform Compact is an impairment of the obligation of contract forbidden by both the State and Federal constitutions. We have concluded that the effect of the Secretary of State's interpretation is to implement rather than vary the terms of the Compact. Thus, the Secretary of State's actions cannot be construed as an impairment of the obligations of the contracting States since there is no showing that the rights of plaintiff which accrued under the Uniform Compact were adversely affected.

■■ Another contention raised by plaintiff is that the Secretary of State's interpretation of the Uniform Compact places an unreasonable burden on interstate commerce. In *Hendrick v. Maryland*, 235 U.S. 610, 624, 59 L.Ed. 385, 391, 35 S. Ct. 140, the United States Supreme Court upheld the right of a State to tax interstate vehicles: "[S]o long as [the amount of the charges and the method of collection] are reasonable and are fixed according to some uniform, fair, and practical standard, they constitute no burden on interstate commerce." Plaintiff claims that the reassessment of its first-year applicant's fee is in violation of the standard enunciated in *Hendrick* and therefore is constitutionally impermissible. We do not agree.

■■ A State can impose a tax on interstate commerce in order to exact compensation for the use and maintenance of facilities provided by the State. (*Freeman v. Hewit*, 329 U.S. 249, 91 L. Ed. 265, 67 S. Ct. 274; *Hendrick v. Maryland*, 235 U.S. 610, 59 L. Ed. 385, 35 S. Ct. 140.) Mathematical exactitude is not required in the formula to determine the State tax on motor vehicles (*Capitol Greyhound Lines v. Brice*, 339 U.S. 542, 94 L. Ed. 1053, 70 S. Ct. 806; *Bode v. Barrett*, 412 Ill. 204, 106 N.E.2d 521, *aff'd*, 344 U.S. 583, 97 L. Ed. 567, 73 S. Ct. 468); the State's constitutionality is measured by whether the total or excise taxes levied for the privilege of using roads produces an amount which is shown to be in excess of fair or reasonable compensation to the State for the privilege. (*Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.*, 405 U.S. 707, 31 L.Ed. 2d 620, 92 S. Ct. 1349; *Mansfield v. Carpentier*, 6 Ill. 2d 455, 129 N.E.2d 166.) Where the system itself is not an arbitrary scheme and is not applied in a discriminatory way, an occasional inequity which results in the system's application is insufficient to overturn the licensing provisions. (*Bode v. Barrett*, 412 Ill. 204, 106 N.E.2d 521, *aff'd*, 344 U.S. 583, 97 L. Ed. 567, 73 S. Ct. 468.) National has failed to introduce any evidence on

this point. The statutory scheme contained in the Uniform Compact stands as correct in the absence of evidence that the plaintiff is compelled to pay fees which bear no reasonable relationship to the privilege granted. *Capitol Greyhound Lines v. Brice*, 339 U.S. 542, 94 L. Ed. 1053, 70 S. Ct. 806.

Our examination of the Compact does not suggest that the Secretary of State's interpretation of sections 50 and 60 is arbitrary or capricious merely because an applicant is first required to pay fees on the basis of an estimate but can be later audited using the standard of actual mileage to determine whether the State was deprived of revenue. The imprecision is not in the standard for determining fees, but rather in the uncertainty as to the extent of the applicant's operations.

The specter of an unwieldy administrative mechanism for reassessing fees, which plaintiff raises, is not borne out by the facts. Reassessment of first-year estimates would only occur to initial applications where the estimated mileage deviates substantially from the actual operations. Lionel Fauss, National's president, testified that the reason plaintiff's estimate was much lower than its operations in Illinois in 1972 was that National, in contrast with other carriers, has no regular routes but depends on the particular needs of its shippers; and in 1972, National lost anticipated contracts with four shippers. Such a situation is not often likely to present itself. Reassessment presents little danger of an administrative tangle which would impose an undue burden on interstate commerce.

For the reasons stated the judgment is affirmed.

Judgment affirmed.

SIMON and O'CONNOR, JJ., concur.