CARLISLE B. ROBERTS, Judge.
 

 The plaintiff appealed from defendant’s Order No. VL 79-330, dated June 5, 1979, sustaining the assessment of taxes under the Western Oregon Severance Tax Law for the tax year 1978-1979.
 

 ORS 321.282(4) allows the plaintiff, as an owner of less than 1,000 acres of forest land, to elect to calculate and pay tax on the basis of net stumpage recovery. The statute defines net stumpage recovery as "* * * the selling price of the logs at a conversion center in an arm’s length transaction less administration, logging and log hauling costs
 
 typical
 
 for the type
 
 *[397]
 
 of harvest
 
 as determined by the department.
 
 * * *” (Emphasis supplied.)
 

 The plaintiff alleged actual costs of $115 per thousand board feet (MBF) and contended that the logging costs allowed by the Department of Revenue of $105 per MBF were too low in his particular situation.
 

 The plaintiff testified that he received two logging bids at a proposed cost to him of 50 percent of the price paid by the mill when the logs were delivered to it. The plaintiff explained that this was a customary practice in his area but, at the time, the plaintiff was ill and could not supervise the operation. He testified that prior dealings gave him reason to distrust both bidders. One logger to whom the plaintiff could entrust the operation bid $115 per MBF for the logging and hauling. The plaintiff testified that the area to be logged was approximately 90 acres of scattered, stunt-. ed Douglas fir, yielding a harvest of less than 2 MBF per acre and, therefore, it was costlier to log than a denser stand. In addition, the logger whose bid was accepted "did everything” and the fact that it was wintertime logging convinced the plaintiff that the bid was a reasonable one.
 

 Throughout his testimony, the plaintiff, although acquainted with the pertinent statute, overlooked the statute’s mandate that costs must be "typical.” ORS 321.282(4). The plaintiff’s position was made clear; i.e., ill health, inability personally to supervise the logging operation, the necessity of paying a premium to obtain the services of a logger whom the plaintiff trusted and the increased costs due to winter logging necessarily led to a higher out-of-pocket cost than normal. Yet, all of these factors lead to atypical costs, which the tax statute seeks to avoid.
 

 Louis Bateman, manager of the Timber Valuation Unit of the Department of Revenue, testified that the department, after research in the field, prepares tables of typical logging and hauling costs and he offered
 
 *[398]
 
 figures for three cost zones in support of his contention that $105 per MBF was typical for logging costs of properties comparable to the subject property. (Def Ex E, F, G.)
 

 Richard Baker, employed in the Timber Section of the Department of Revenue in the analysis of logging costs, made a physical examination of the subject property and offered Defendant’s Exhibit D to show the area where the logging occurred. Mr. Baker testified that an aerial photograph supported his conclusion that approximately 67 acres were logged. He alleged that the harvest was a "residual clear-cut” of an approximately 50-year old stand and that two separate landings used in logging the property were within 700 to 800 feet of the bulk of the timber cut.
 

 The defendant’s expert witness offered Exhibit A, showing comparable properties where the costs of harvesting ran from $90 to $110 per MBF. Mr. Baker testified that in his opinion a typical cost for the subject property would be $105 per MBF. Mr. Baker’s opinion concerning typical costs was supported by substantial research, which was not refuted and which was persuasive to the court.
 

 ORS 321.282(4) specifically mandates that only typical costs will be allowed. No doubt, this is a legislative safeguard against exorbitant claims of costs. A person less scrupulous than the plaintiff could hire a relative and pay him an excessive fee for logging and hauling, thereby imposing the costs on all property taxpayers, defeating the tax scheme as devised by the legislature. There is no suggestion of improper dealing by the plaintiff. The court has no question of plaintiff’s honesty. However, the language of the statute must be followed.
 

 The court notes that a tax is often a rough measurement but the statute cannot be tailored for each case in order to avoid some roughness in its application. Countless variations in facts require us to
 
 *[399]
 
 be content with "rough approximations rather than precision.”
 
 Capitol Greyhound Lines v. Brice,
 
 339 US 542, 546, 70 S Ct 806, 809, 94 L Ed 1053, 1057, 17 ALR2d 407, 411 (1950), quoted in
 
 Price v. Dept. of Rev.,
 
 7 OTR 18, 26 (1977).
 

 Although the plaintiff offered proof of having paid $115 per MBF for logging costs and this proof is accepted, the preponderance of the evidence supports that "typical” costs would be approximately $105 per MBF. Therefore, the defendant’s Order No. VL 79-330 should be and hereby is affirmed.
 

 Each party shall pay his or its own costs. Defendant shall prepare the decree in accord with this decision.