THE STATE, EX REL. THE TEXAS COMPANY, RELATOR, v.
SAMUEL D. DICKINSON, SECRETARY OF STATE, RE-
SPONDENT.

Argued November 8, 1909—Decided March 5, 1910.

1. A writ of *mandamus* will not go to the secretary of state requir-
ing him to issue a certificate authorizing a Texas corporation to
do business in this state, without the payment of such a license fee
as the laws of the State of Texas exact from a New Jersey
corporation for the privilege of doing business in Texas.

2. Section 101 of our Corporation act (*Pamph. L.* 1896, *p.* 308)
was first enacted in 1894. *Pamph. L., p.* 446. It imposed upon
foreign corporations seeking to do business in this state the same
license fees as are imposed upon New Jersey corporations by the
laws of the home state of such foreign company. The act of
1894 was impliedly repealed by an act (*Pamph. L.* 1904, *p.* 384).
The last act was repealed in express terms by the act of 1905.
*Pamph. L., p.* 60. *Held*, that the repeal of the act of 1904 re-
vived the act of 1894.

3. The provision of section 101 of our Corporation act is not
inimical to article 4, section 7, paragraph 4, of our constitution,
which prescribes that no act shall provide that any existing law
shall be made a part of such act, except by inserting it in the
same.

This is an application on behalf of The Texas Company, a
foreign corporation, for a writ of *mandamus* to be directed
to the Secretary of State of New Jersey to compel that officer
to issue to the relator a certificate that the relator is author-
ized to transact business in this state. The duty thus sought
to be enforced is alleged to arise from the terms of section 97
of our Corporation act. *Pamph. L.* 1896, *p.* 307, § 97.

Before Justices REED, BERGEN and MINTURN.

For the relator, *McCarter & English.*

For the respondent, *Edmund Wilson,* attorney-general.

The opinion of the court was delivered by

REED, J. The petitioner is chartered in the State of Texas.
On September 9th, 1909, it presented to the respondent a

copy of its charter, a statement of the amount of its capital stock authorized and actually issued, a statement of the character of the business which it desires to transact in this state, of the place of its principal office in this state and of the name of its agent for the service of process in this state.

The petition states that The Texas Company has tendered to the respondent a fee of ten dollars ($10) as a fee for filing such statement, and the issuance of the required certificate. The relator also tendered such sum as would be required for recording the charter and the statement thus proffered.

The respondent declined to accept the tender, and to issue the certificate.

It is admitted that the relator is not a banking, insurance, ferry or railroad company; that the business in which it is engaged is such as may be lawfully transacted by corporations in New Jersey, and that it is by its charter permitted to transact business in such foreign jurisdiction as it may deem proper; and that the authorized capital stock of the company is $12,000,000.

It is admitted that the respondent demanded as a condition precedent to the filing of the papers and the issuance of the certificate, under section 97 of the Corporation act, the payment of the sum of $12,040.00 as a license fee. This demand of the respondent was based upon section 101 of our Corporation act. *Pamph. L.* 1896, *p.* 308. The text of that section is as follows:

"When, by the laws of any other state or nation, any other or greater taxes, fines, penalties, licenses, fees or other obligations or requirements are imposed upon corporations of this state, doing business in such other state or nation, or upon their agents therein, than the laws of this state impose upon their corporation or agents doing business in this state, so long as such laws continue in force in such foreign state or nation, the same taxes, fines, penalties, licenses, fees, obligations and requirements of whatever kind shall be imposed upon all corporations of such other state or nation doing

business within this state, and upon their agents here; *provided,* that nothing herein shall be held to repeal any duty, condition or requirements now imposed by law upon such corporations of other states or nations transacting business in this state."

It is admitted that the twenty-second chapter of the General Laws of Texas, passed in 1907, provides as follows:

"Section 1. That chapter 91, acts of the twenty-ninth legislature of the State of Texas, be amended so as to hereafter read as follows:

"Article 2439. The secretary of state, besides other fees that may be prescribed by law, is authorized and required to charge for the use of the state the following fees:   *   *   * Each foreign corporation obtaining permit to do business in this state shall pay fees as follows: $50 for the first $10,000 of its authorized capital stock, and $10 for each additional $10,000 or fractional part thereof."

The secretary of state required of the relator that as a condition precedent to receiving its certificate to do business here, it should pay the same amount that the State of Texas exacts of New Jersey corporations for permission to do business in that state.

It is insisted on behalf of the relator that section 101 of the Corporation act is no longer in force. It is claimed to have been repealed by subsequent legislation. The history of the legislation respecting this subject is as follows: The text of section 101 first appeared in our legislation in a supplement to the Corporation act passed in 1894. *Pamph. L., p.* 446. This act was impliedly repealed by an act passed in 1904 (*Pamph. L., p.* 384), entitled "An act for the licensing and taxation of foreign corporations." This act required the payment by such foreign corporations of the fees required by law, and such further and additional sum, if any, as corporations of New Jersey are required by the law of the state, territory or country where such corporations are incorporated to pay, before they are allowed to transact business in such state, territory or country. This last act was repealed in express terms by the act of 1905. *Pamph. L., p.* 60.

Respecting the effect of this legislation it is to be observed that assuming that the act of 1894 was repealed by the act of 1904, *supra,* the common law doctrine of statutory construction is that the repeal of the act of 1904 by this act of 1905 operated to revive the act of 1894; and the existence of this common law rule in this state is recognized in the case of *Wallace* v. *Bradshaw,* 25 *Vroom* 175.

It is contended, however, on the part of the relator, that this doctrine of the common law is not universal; and that whenever it appears that the legislative intention was manifestly that the repealer should not operate to revive an earlier statute, the common law rule will not control; and it is insisted that such intention appears in this instance from the fact that the substance of the act of 1894 respecting the imposition of the same fees upon foreign corporations seeking a certificate here as are imposed upon corporations of this state by the state from which the applicant comes, was incorporated in the repealed statute of 1904.

It is argued, therefore, that when this language was expressly repealed, it cannot be said that the legislature intended that similar language in a preceding statute should be revived by force of this repealer. If the soundness of this position is recognized, the effect would be to remove from the doctrine of implied revival all instances where there had been an implied repeal of one or more statutes, by the adoption of a single statute containing a general scheme prescribing the only rule which would thereafter govern the matters provided for in it.

The repeal of the later general statute would put an end to all those provisions which were merely restatements of, or variations of, the language employed in the preceding act. This result would flow from the reasoning that the legislature could not have intended by the repeal of the statute containing this language to have revived a statute containing similar language, but must have intended to annul the statutory language entirely.

This line of argument, however, does not seem to be sound. The intention would seem to be rather that the new features

in the later general act were repealed, and the situation, as it was at the date of the passage of that act, would be restored. Otherwise, the repealer would extend to almost every provision which had theretofore been enacted respecting corporations. It would not stop at the particular clause styled in the argument the retaliatory clause, but would include as well the provision for the payment of any fee at all. Indeed, the provision for filing the certificate of incorporation; the provision for the statement of the amount of capital stock authorized and issued, and for the designation of an agent to receive service of process, would disappear. So, also, the clause requiring the secretary of state, upon the payment of the fee required by law, to issue to such foreign corporations a certificate, would become a nullity. All these provisions are included in the repealed statute of 1904, as well as in the act of 1894.

We are of the opinion that the later act was revived by the express repealer of the act of 1904.

It is again insisted that section 101 of the Corporation act conflicts with article 4, section 7, paragraph 4, of our constitution, which provides, among other things, that "No act shall be passed which shall provide that any existing law or any part thereof shall be made or deemed a part of the act, or which shall enact that any existing law or any part thereof shall be applicable except by inserting it in such act."

The constitutionality of the clause of the statute of which section 101 is a sample has been the subject of considerable judicial consideration. There are numerous statutes elsewhere dealing with the licensing by one state of corporations organized in other states, and with legislation fixing fees and conditions upon the payment of which, or the performance of which, foreign corporations shall be permitted to perform acts and do business in a foreign state as a matter of comity and under police regulation, the kind of fees and the character of the conditions being contingent upon the legislation of the state where the corporation has its home.

The constitutionality of these statutes has been upheld against the objection that they involve the passing of laws

which are to take effect upon the contingency of certain legislation in other states, since it is competent in the legislature of a state in its providence to enact statutes which become operative only upon the happening of the contingency named therein. 19 *Cyc.* 1265.

The most thoroughly discussed case in which the ability of the legislature to enact statutes of this character is vindicated, is *People* v. *Philadelphia Fire Association,* 92 *N. Y.* 311. Similar conclusions were reached in *Home Insurance Co.* v. *Swigert,* 104 *Ill.* 653, and in *Phoenix Insurance Co.* v. *Welch,* 29 *Kan.* 672, Mr. Justice Brewer writing the opinion. The validity of our legislation was recognized in the case of *State* v. *Parker,* 26 *Vroom* 357.

The fact that the contingency arose, or was controlled by the legislation of a foreign state, did not within the meaning of the constitution, incorporate the foreign legislation into the local statute. Although the constitution of the State of New York contains a clause similar to the clause in ours invoked in this case, it seems not to have been invoked as being prohibitive of the legislation dealt with in the case of *People* v. *Philadelphia Fire Association, supra.*

The ground now taken, however, seems to have been relied upon in the case of *State, ex rel. Baldwin, Attorney-General,* v. *Insurance Company of North America,* 115 *Ind.* 257, in which the validity of similar legislation was in question. The language of the court was: "Nor can it be said with any degree of legal accuracy that by the enactment of such retaliatory section, the general assembly have adopted, or have attempted to adopt, the statute laws of the State of Pennsylvania or any part thereof, upon the subject of insurance, or upon any other subject. To the people and courts of this state, the statutes of Pennsylvania on the subject of insurance, since such retaliatory section became a part of our law, have been, as they were before, facts merely, and as such they must be pleaded and proved by any party who relies upon their existence as constituting a part of his cause of action."

We think the legislation criticised is constitutional.

It is again insisted that section 101 if constitutional, is a mere directory expression of the will of the legislature, and is not enforceable. The point thus made is that no mode is prescribed for enforcing and collecting the fees, fines, penalties imposed in section 101 of the Corporation act; that therefore the secretary of state has no right to fix the amount to be paid under that section and enforce its payment, by insisting upon such payment as a condition precedent to the issuance of a certificate.

The query is whether the sum demanded by the secretary of state is a license fee, for if it is, it seems that its payment is clearly a condition attending the issuance of a license.

The imposition under the Texas statute seems clearly a license fee. The statute empowered the secretary of state to charge each foreign company obtaining a permit to do business in the state, a graduated but designated sum of money. This sum is a single payment for a license to enter the state and do business there.

The reciprocal requirement imposed by section 101 upon foreign corporations, therefore, is the payment of a license fee for permitting them to do business in this state. The permit to do business precedes the doing of the business, and the license fee is for permission to do business, and not for the doing of the business. The duty of the secretary of state is to issue licenses upon the payment of the requisite fee. It is true that his conduct, if called in question, is subject to judicial supervision; but if upon a judicial investigation as to whether the conditions exist which justifies the exaction of fees, it appears that they do exist, no judicial compulsion will be exerted to compel that officer to act until the condition is met.

Nor does the fact, if true, that there is no machinery provided for collecting penalties and taxes from such corporations, other than license fees, change the duty of the respondent. That fact would not affect the enforceable portions of the statute.

The petition for a *mandamus* is disallowed.