120 N.J. Super. 270 (1972)
293 A.2d 711
B & L MOTOR FREIGHT, INC., THE KAPLAN TRUCKING COMPANY, MIDWEST EMERY FREIGHT EXPRESS, INC., WILSON FREIGHT COMPANY, COLDWAY FOOD EXPRESS, INC., DEIOMA TRUCKING COMPANY, FREIGHTWAY CORPORATION, EDGAR W. LONG, INC., HARSHMAN-INDUSTRIAL CARTAGE COMPANY, REED LINES, INC., CORPORATIONS OF THE STATE OF OHIO; PACIFIC INTERMOUNTAIN EXPRESS, INC., A CORPORATION OF THE STATE OF NEVADA, INTERSTATE MOTOR FREIGHT SYSTEM, A CORPORATION OF THE STATE OF MICHIGAN, OHIO EASTERN EXPRESS, INC., A CORPORATION OF THE STATE OF DELAWARE, PLAINTIFFS
v.
RONALD M. HEYMANN, DIRECTOR OF THE DIVISION OF MOTOR VEHICLES OF THE STATE OF NEW JERSEY, AND GEORGE F. KUGLER, JR., ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 27, 1972.
*272 Mr. Albert G. Besser for plaintiffs (Messrs. Hannoch, Weisman, Stern & Beser) (Mr. Dean A. Gaver on brief).
Richard M. Conley, Deputy Attorney General, Steven R. Bolson and Michael E. Goldman, Deputy Attys. Gen., on the brief, for defendants.
HERBERT, J.S.C.
The original and intervening plaintiffs are trucking companies. All are engaged in transporting goods from, into and through several states, including New Jersey. Each plaintiff operates a fleet of motor vehicles and carries on its business under the authority of certificates of public convenience and necessity issued by the Interstate Commerce Commission. Most of the plaintiffs are incorporated under the laws of Ohio, but one is incorporated in Delaware, one in Nevada and one in Michigan. Each plaintiff has its principal place of business outside of New Jersey, although all of them have qualified to do business in New Jersey.
Plaintiffs challenge the constitutionality of Chapter 119 of the Laws of 1969; N.J.S.A. 39:3-6 et seq., a statute which took effect July 1, 1969 and which appears to be commonly called the New Jersey Counterpart Fee Act. The most significant section for present purposes reads as follows:
Except as otherwise provided by reciprocity agreement or arrangement entered into by the director or by a declaration issued by him, no motor vehicle or motor drawn vehicle registered in another jurisdiction *273 which requires the payment of a registration fee or fees or taxes of any other nature from an owner of a similar vehicle properly registered in this State for the operation of such vehicle on the highways of such other State, shall be operated on the highways of this State unless a fee is paid to the director, equal in amount to the fee or tax collected by the authorized official or body of such other jurisdiction for the operation on its highways of the motor vehicle or motor-drawn vehicle properly registered in this State. In the event that the fee or tax collected by such other jurisdiction is imposed for the registration of the vehicle therein, then in no case shall the fee paid to the director be less than the amount now or hereafter provided for by the laws of this State for the registration of a similar vehicle. The director shall from time to time promulgate such regulations as may be necessary for the effective enforcement of this section. (L. 1969, c. 119, § 1; N.J.S.A. 39:3-6)
The "director" referred to in the legislation is the Director of the Division of Motor Vehicles. The title given to Chapter 119 of the Laws of 1969 reads as follows:
An Act concerning motor vehicles and reciprocal relations with other jurisdictions with respect to motor vehicle fees and taxation, and amending sections 39:3-6 and 39:3-15 and supplementing chapter 3 of Title 39, of the Revised Statutes.
It is hardly necessary to add that Title 39 of the Statutes is designated "Motor Vehicles and Traffic Regulation."
Following the above-quoted section of the Counterpart Fee Act are a number of sections dealing with the powers and duties of the director with respect to negotiating and entering into reciprocity agreements and to enforcement of the statute and of any agreements made.
A resident of one state who uses his passenger automobile to tour through other states will not be required to pay taxes of any sort to the other states; he enjoys reciprocity at its broadest. No such statement can be made about interstate use of motor trucks and buses. General information about the complexity of the fees and charges which are applicable to operating trucks and buses across state lines can be found in two publications furnished to me by counsel: (a) "A History of Motor Vehicle Reciprocity" compiled and issued March, 1965 by the American Association of *274 Motor Vehicles Administrators, Washington, D.C., and (b) "Motor Truck Reciprocity," Public Relations Department, American Trucking Association, Inc., Washington, D.C. Both of those publications use the term "third structure taxes" in describing the type of fee or tax to be paid under N.J.S.A. 39:3-6. In this scheme of terminology registration fees are the first structure taxes and fuel taxes are the second structure taxes. After pointing out the benefits of reciprocity  convenience, lower costs to both shipper and consumer of goods, lower bus fares, etc.  "A History of Motor Vehicle Reciprocity" says at page 1:
Each state depends on license fees and fuel taxes to build and maintain highways. As long as these fees and taxes are uniform, reciprocity can be extended. When extra or third structure taxes are imposed by one state or several states, reciprocity is restricted. Sometimes it ceases. Such extra taxes are expensive to collect, difficult to enforce and are not conducive to good relations between states. They threaten the entire structure of reciprocity, for other states enact retaliatory levies and the result is often loss of reciprocity.
Plaintiffs' trucks are not covered by any reciprocity agreement New Jersey has subscribed to; therefore, plaintiffs' trucking in New Jersey is subject to the charges imposed by the Act if it is valid. On the basis of past experience with operations in this state, plaintiffs have shown that those charges will be substantial and will be considerably in excess of the amounts New Jersey would charge under the statute for comparable operations by an owner whose trucks are registered in any one of several other states. The position taken by plaintiffs is summarized in their trial brief (page 3) as follows:
The determinative factor with regard to the taxes they pay under N.J.S.A. 39:3-6 is not the nature of their commercial operations or the extent of their actual use of New Jersey roads, but simply the adventitious situs of registration of their vehicles. In short, the statute, in actual effect, establishes a different taxing structure for affected vehicles from each of the sister states.

* * * * * * * *
They contend that the statute as presently implemented and administered violates traditional federal and state constitutional safeguards *275 against denial of equal protection of the laws and due process of law and constitutes an unconstitutional burden on interstate commerce. Furthermore, plaintiffs argue, that the enactment effects an unlawful delegation of legislative powers and constitutes special legislation  all in derogation of the New Jersey Constitution.
Many cases have been cited in the briefs. Extensive reading in these cited authorities as well as some others has led me to the conclusion that the several propositions argued on plaintiffs' behalf have all been considered by the courts and ruled upon adversely to plaintiffs' position here.
Retaliatory statutes. This general type of statute has often been considered and almost universally has been upheld. There has been some forceful criticism of the use of the term "retaliatory." In Phoenix Ins. Co. v. Welch, 29 Kan. 672, at 674 and 675 (1883) the court upheld the statute before it and speaking through Justice Brewer (later of the United States Supreme Court) said:
It seems to us more justly to be deemed a provision for reciprocity. It says, in effect, that while we welcome all insurance corporations of other states to the transaction of business within our limits, we insist upon a like welcome elsewhere, and that if other states shall attempt, directly or indirectly, to debar our corporations from the transaction of insurance business within their borders, we shall meet their corporations with the same restrictions and disability. It is, in brief, an appeal for comity; a demand for equality. As such, it is manifestly fair and just. It arouses no sense of injustice, and simply says to every other state in the Union: "We will meet you on the basis of equality and comity, and will treat you as you treat us.
Long ago the United States Supreme Court upheld a New York statute imposing upon a foreign insurance company doing business in New York taxes and other requirements equivalent to those imposed upon New York insurance companies when doing business in the home state of the foreign corporation. Fire Assn. of Philadelphia v. New York, 119 U.S. 110, 7 S.Ct. 108, 30 L.Ed. 342 (1886). The majority acted upon the premise that the plaintiff, not being engaged in interstate commerce, could be excluded entirely from New *276 York and that valid conditions, therefore, might be laid down for its admission to New York. We know, however, that the court considered points for which the plaintiffs are arguing here; Justice Harland said in his dissenting opinion (7 S.Ct. 114, 30 L.Ed. 347):
An individual is denied the equal protection of the laws if his property is subjected by the State to higher taxation than is imposed upon like property of other individuals in the same community. So, a corporation is denied that protection when its property is subjected by the State, under whose laws it is organized, to more burdensome taxation than is imposed upon other domestic corporations of the same class. So, also, a corporation of one State doing business by its agents in another State by the latter's consent, is denied the equal protection of the laws, if its business there is subjected to higher taxation than is imposed upon the business of like corporations from other States. These propositions seem to me to be indisputable. They are necessarily involved in the concession that corporations, like individuals, are entitled to the equal protection of the laws.
This dissent of 1886 has never won majority acceptance. The subject of retaliatory legislation appears to have been given very little subsequent attention by the United States Supreme Court, but numerous decisions of the state courts have sustained this type of law. An annotation entitled "Constitutionality, construction, operation, and effect of retaliatory statutes against foreign corporations doing business within state," 91 A.L.R. 795 (1934) contains a list of the cases at page 798. Included in that list is Texas Co. v. Dickinson, 79 N.J.L. 292 (Sup. Ct. 1910). More recently the same subject has been dealt with in 36 Am. Jur.2d, Foreign Corporations, § 267, p. 269 (1968) where the text writer said (p. 270):
The constitutionality of retaliatory statutes against foreign corporations has, with few exceptions, generally been sustained, as against various objections, both under state and federal constitutions. It has been held that no provision of the Fourteenth Amendment is violated by such a statute.

* * * * * * * *
Most of the decisions which have passed upon the question have held, however, that statutes of the type under consideration make no *277 unconstitutional discriminations and do not violate constitutional provisions imposing restrictions upon the legislative power to classify. The constitutionality of such statutes has generally been sustained as against the objection that they delegate the legislative power of the legislature of the retaliating state to the legislature of the state retaliated against, though a contrary result has been reached.
The footnotes to this quotation add a few cases to those collected in 91 A.L.R. at 798, supra, and the only authority cited as an exception to the general rule is State v. Firemen's Fund Ins. Co., 223 Ala. 134, 134 So. 858, 77 A.L.R. 1486 (1931).
Reciprocal (not retaliatory) features of state laws imposing taxes on motor vehicles came before the court in Bode v. Barrett, 344 U.S. 583, 73 S.Ct. 468, 97 L.Ed. 567 (1953) and in Storaasli v. Minnesota, 283 U.S. 57, 51 S.Ct. 354, 75 L.Ed. 839 (1931). In Bode the appellants were motor truck operators engaged in interstate as well as intrastate commerce. They attacked the constitutionality of an Illinois law imposing a tax for the use of that state's highways and measuring the tax exclusively by the gross weight of the vehicle. The law was held valid and among the arguments rejected by the court was this: That the statute should be held unconstitutional because it required Illinois residents to pay the tax and at the same time exempted nonresidents if the states of their residence reciprocated by granting like exemptions to Illinois residents. Storaasli was cited as controlling.
In Storaasli the appellant was by Minnesota law a nonresident of that state although stationed at the Ft. Snelling military reservation adjacent to Minneapolis and St. Paul. He objected to the imposition of a motor vehicle registration tax. His car was duly registered at the fort as required by military regulations, but not registered with the Minnesota authorities. Appellant argued, among other things, that he, although a non-resident, had been denied privileges extended to residents of other states to drive their home-registered cars on the highways of Minnesota for a total period of *278 ninety days without making any payment whatever. This argument was held to lack merit. After holding the tax levied against appellant to be an excise for the privilege of using highways, the court said: (in 51 S.Ct. at 356, 75 L.Ed. at p. 843)
But as was pointed out in Kane v. New Jersey [242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222] the absence of any such provision in favor of nonresidents would not render the law discriminatory. A resident of the state who desires to operate his car for a single day is liable for the entire year's tax. If the state determines to extend a privilege to nonresidents, it may with propriety limit the concession to those who have duly registered their vehicles in another state or country. The mere fact that appellant has not so registered his car and cannot, therefore, bring himself within the class benefited by the exemption, does not create a discrimination against him. The state was not bound to make a classification with respect to exemptions for him and those similarly situated.
Interstate Commerce. By way of distinguishing the cases upholding retaliatory statutes, plaintiffs argue that most of those involved insurance laws and are not precedents here, having been decided in an era when the insurance business was held not to constitute interstate commerce. Though the factual premise is sound, I think the argument's legal conclusion is unsound. State legislation which has the effect of regulating interstate commerce is sometimes valid, sometimes invalid. If the regulation takes the form of a reciprocal (retaliatory) statute, the use of that form will not make unconstitutional a state requirement which would otherwise be valid for a foreign corporation engaged in interstate commerce. This view of existing law is supported by In re Insurance Tax Cases, 160 Kan. 300, 161 P.2d 726 (1945), aff'd without opinion Prudential Ins. Co. of America v. Hobbs, 328 U.S. 822, 66 S.Ct. 1360, 90 L.Ed. 1602 (1946). That decision followed the general rule and sustained insurance laws having a retaliatory feature. It was handed down after United States v. South-Eastern Underwriters Assn., 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), and after an Act of Congress in 1945 (15 *279 U.S.C.A. § 1011, et seq.) which confirmed state laws regulating and taxing the insurance business. United States v. South-Eastern Underwriters having declared the transaction of fire insurance business across state lines to be interstate commerce, Congress thus delegated by the statute of 1945 some of its power under the commerce clause of the Federal Constitution to the states, but that delegation serves to emphasize the commerce-regulating character of the Kansas insurance laws, with their retaliatory features, which were upheld in the Insurance Tax Cases, though challenged there on the express ground that they had all been voided by United States v. South-Eastern Underwriters. Also, plaintiffs' argument that insurance precedents are inapplicable here fails to recognize that not all retaliatory legislation which has been upheld was addressed to insurance companies, and that some cases have involved corporations rather clearly engaged in shipping products across state lines. For example, Texas Co. v. Dickinson, supra, arose under Section 101 of our General Corporation Act, L. 1896, c. 185, p. 308, a reciprocal or retaliatory section concerning foreign corporations which was carried over into the Revised Statutes of 1937, R.S. 14:15-5, and continued without change until 1963. L. 1963, c. 124, § 2.
Moreover, a state can lay down appropriate conditions for use of its highways by vehicles in interstate commerce and can exclude them entirely if the conditions are not met. Kane v. New Jersey, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222 (1916). For present purposes this power resembles the power to exclude a foreign insurance company. Kane involved only driver's license fees and car registration fees, but it has been held that common carriers by motor trucks operating between Aurora, Indiana and Cincinnati, Ohio and engaged exclusively in interstate commerce, could be required to obtain a certificate before using Ohio's highways and further required to pay thereafter as a condition of continued use an annual tax graduated according to the number and *280 capacity of the trucks being operated. Clark v. Poor, 274 U.S. 554, 47 S.Ct. 702, 71 L.Ed. 1199 (1927).
To show that N.J.S.A. 39:3-6 is an unconstitutional attempt by New Jersey to infringe upon the power of Congress to regulate interstate commerce, the plaintiff's have to demonstrate that the burdens placed upon them by the statute are objectionable without regard to how the statute affects other trucking companies based in other states.
Section 6 provides in part that "* * * no motor vehicle * * * registered in another jurisdiction * * * shall be operated on the highways of this State unless a fee is paid to the director * * *," thus linking highway use with the fee; but there is nothing in Section 6 or elsewhere which dedicates or applies to highway purposes the moneys collected. The Director of Motor Vehicles is required to pay over his collections to the State Treasurer (N.J.S.A. 39:5-40), in whose hands they become part of the General State Fund and subject to general appropriation laws (N.J.S.A. 52:9H.2 and 52:9H-3) including, of course, appropriations for highways.
Lack of a dedication of funds to highway purposes is not fatal to N.J.S.A. 39:3-6. New Jersey is charging each of the plaintiffs a fee and in return they have the privilege to use its roads. In Clark v. Poor, supra, Justice Brandeis said for the court:
There is no suggestion that the tax discriminates against interstate commerce. Nor is it suggested that the tax is so large as to obstruct interstate commerce. It is said that all of the tax is not used for maintenance and repair of the highways; that some of it is used for defraying the expenses of the commission in the administration or enforcement of the act, and some for other purposes. This, if true, is immaterial. Since the tax is assessed for a proper purpose and is not objectionable in amount, the use to which the proceeds are put is not a matter which concerns the plaintiffs. (274 U.S. 557, 47 S.Ct. 703, 71 L.Ed. 1201)
And in Morf v. Bingaman, 298 U.S. 407, 412, 56 S.Ct. 756, 758; 80 L.Ed. 1245, 1250 (1936) the court upheld a *281 tax statute of New Mexico and said inter alia, by Justice Stone:
But where the manner of the levy, like that prescribed by the present statute, definitely identifies it as a fee charged for the grant of the privilege, it is immaterial whether the state places the fees collected in the pocket out of which it pays highway maintenance charges or in some other.
The United States Supreme Court has said that a Maryland tax of two per cent on the fair market value of motor vehicles used in interstate commerce "should be judged by its result, not its formula, and must stand unless proven to be unreasonable in amount for the privilege granted." Capitol Greyhound Lines v. Brice, 339 U.S. 542, 545, 70 S.Ct. 806, 808; 94 L.Ed. 1053, 1056; 17 A.L.R.2d 407 (1950). (And see Annotation, "State taxation of motor carriers as affected by commerce clause," 17 A.L.R.2d 421, especially at p. 432, § 3.) Although the appellants in that case disputed the constitutionality of a tax which depended upon a vehicle's cost rather than on use of highways and showed a tax of $505.17 charged to one of them for a route of nine miles on Maryland's highways compared with a tax to another appellant of $372.55 for a 64-mile route, the taxing statute was upheld. The history of the court's progress in this field was described by Justice Frankfurter in his dissenting opinion, to which he appended an analytical list of prior decisions. The New Jersey Supreme Court, in upholding an excise tax based on mileage traveled by interstate autobuses, considered and applied Capitol Greyhound Lines v. Brice, supra. Safeway Trails, Inc. v. Furman, 41 N.J. 467 (1964); see especially headnote reference [13-15] at page 487, 197 A.2d 366, appeal dismissed and cert. den. 379 U.S. 14, 85 S.Ct. 144, 13 L.Ed.2d 84.
I think that Capitol Greyhound Lines v. Brice and Safeway Trails dispose of plaintiffs' argument under the Commerce Clause. There is no significance under that clause in lower fees for comparable or greater use of New Jersey's *282 highways by other truckmen whose vehicles are based in states which give trucks from New Jersey the benefit of low rates. It has not been proved here that the fee to be paid to New Jersey by any plaintiff will be an excessive charge for the privilege of using our roads. The burden of proof in this type of case is on the taxpayer. Bode v. Barrett, supra; Capitol Greyhound Lines v. Brice, supra.
Plaintiffs, however, have put in proofs demonstrating that the amounts they are called upon to pay are substantial. They have shown that collectively they operated their vehicles over some nine million miles of New Jersey roadway in 1969 and ten million seven hundred thousand miles in 1970. They have calculated the counterpart fee or tax called for by N.J.S.A. 39:3-6 by multiplying New Jersey miles by two cents a mile, such two-cent rate being applicable to standard five-axle combinations from Ohio. This calculation has produced a total of $183,433 as the maximum estimated counterpart fees of all plaintiffs for the year 1969. For 1970 plaintiffs have offered in evidence a fee total for the whole group amounting to $74,962 and have stated in their submitted material (Ex. P-18) that this figure comes from reports of counterpart liability for 1970 as submitted by plaintiffs. Plaintiffs have not established by their proofs that the amounts each of them has been called upon to pay to New Jersey under N.J.S.A. 39:3-6, and will be called upon to pay, are in excess of a fair compensation for the privilege of using New Jersey's roads. This conclusion does not overlook the evidence presented by plaintiffs concerning the effect upon plaintiffs' profit margins of the state's charges, but the profit and loss effect upon a particular plaintiff has no bearing upon the reasonableness or unreasonableness of that plaintiff's total bill in relation to its use of our highways.
Due Process. This portion of the Fourteenth Amendment of the Federal Constitution, though argued by plaintiffs, cannot help them. It is no protection against inequality of tax burdens. Gomillion v. Lightfoot, 364 U.S. 339, 343, 81 S.Ct. 125, 5 L.Ed.2d 110, 114 (1960).
*283 Equal Protection. What has already been said about retaliatory legislation and the authorities in that field applies here. Our statute has the effect of classifying truck operators by the states in which their vehicles are registered or based. No plaintiff complains that New Jersey is treating him in a manner which differs from its treatment of a competitor from his own state. I think it clear that the classification is not arbitrary and has a fair relationship to the promotion of reciprocity agreements, that promotion being one of the primary objectives of the Act, an objective which, incidentally, has been successful to a considerable degree. The test of reasonable classification under the equal protection clause has been met. Guill v. Mayor & Council of City of Hoboken, 21 N.J. 574, 583 (1956); Schwartz v. Essex County Bd. of Taxation, 129 N.J.L. 129 (Sup. Ct. 1942) affirmed 130 N.J.L. 177 (E. & A. 1943).
Delegation of Legislative Power. Reciprocal and retaliatory laws have often been attacked on this ground. Courts have almost universally held the laws to be valid and the attacks unwarranted. 16 Am. Jur.2d, "Constitutional Law," Sec. 247, p. 498. N.J.S.A. 39:3-6, et seq., is not subject to question on this ground. Plaintiffs go farther, however, and on one aspect of their case contend that the statute is invalid because it contains an unlawful delegation of taxing power to the Director of the Division of Motor Vehicles and his deputy. I see no merit in that. To calculate the fee to be paid by a particular plaintiff it is necessary, of course, to ascertain what the laws of his state are and what a New Jersey truck operator would be charged for the privilege of operating there. As pointed out in some of the cases which have upheld reciprocal and retaliatory statutes, these are questions of fact so far as New Jersey is concerned and can be ascertained by a tax collector in the course of the duties assigned to him.
Vagueness and Uncertainty. What has been said above concerning the Director's duty to ascertain as a fact the applicable laws of other states and their application to *284 New Jersey truck operators is pertinent here. N.J.S.A. 39:3-6 is based on the sensible assumption that other states have tax or fee laws which are being enforced by administrative agencies in those states. Plaintiffs have made no attempt to show that the laws of the states in which their trucks are based cannot be enforced, by reason of vagueness or uncertainty, against a New Jersey-based fleet. No such infirmity should be assumed, and the reasonable assumption is to the contrary.
Plaintiffs go on and argue that administration under N.J.S.A. 39:3-6 is deficient in some respects. They concede the high motives and ability of Joseph Monaco, who is in charge of administering the statute and who holds the title of Chief, Bureau of Motor Carriers in the Division of Motor Vehicles; but they argue that if a man of Mr. Monaco's caliber cannot get the facts and charge the fees provided for by the statute, there is a good indication that the statute has legal infirmities. Among other things and by way of example, plaintiffs point to a higher rate of fuel and fuel use taxes in Pennsylvania than the New Jersey rate. They also point out that this differential, being considered part of a second structure tax, has not been calculated into the fee (or third structure tax) charged to a Pennsylvania trucking company under N.J.S.A. 39:3-6. Considering the complexities of taxes throughout the country on commercial motor vehicles, it would not be surprising to find in some cases grounds for arguing that our statute is not being properly applied. However, I think there is a plain answer to plaintiffs' contentions on this part of the case: No plaintiff is objecting that any fee charged to it has involved any error of calculation. If others have been overcharged or undercharged, no harm to any plaintiff has resulted from that. If a plaintiff came forward with proof of discrimination between him and another member of the same class (i.e. another trucking company based in such plaintiff's state), he would be entitled apparently to have a re-calculation made to eliminate the discrimination [In re Appeals of Kents 2124 Atlantic Ave., *285 Inc., 34 N.J. 21 (1961)]; but there has been no such proof and this case has not been brought to correct any figures, but rather to seek a judgment that the entire statute is invalid.
Judgment will be entered in favor of the defendants and against the plaintiffs. The form of judgment to be submitted for signature should include an appropriate provision for payment to the State of funds forwarded to the clerk by plaintiffs while the case has been pending.