PRIVATE TRUCK COUNCIL OF AMERICA, INC., PPG INDUSTRIES, INC., W.H. CHRISTIE & SONS, INC., AND DENNIS TRUCKING, PLAINTIFFS, v. STATE OF NEW JERSEY AND CLIFFORD W. SNEDEKER, INDIVIDUALLY AND AS DIRECTOR, DIV. OF MOTOR VEHICLES, AND MICHAEL HORN, INDIVIDUALLY AND AS STATE TREASURER OF NEW JERSEY, DEFENDANTS.

WEST MOTOR FREIGHT, INC. AND WEST TRUCK LEASING, INC., PLAINTIFFS, v. CLIFFORD W. SNEDEKER, DIRECTOR, OF THE DIVISION OF MOTOR VEHICLES OF THE STATE OF NEW JERSEY, AND MICHAEL M. HORN, TREASURER OF THE STATE OF NEW JERSEY, AND THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division Mercer County

Decided September 12, 1985.

612

*Arnold L. Simon* for Private Truck Council of America, Inc., et al.; *Jacob P. Billig and Richard A. Allen* admitted *pro hac vice* (*Billig, Sher & Jones,* attorneys).

*Steven G. Wolschina* for West Motor Freight, Inc., et al. (*Brown, Connery, Kulp, Wille, Purnell & Greene,* attorneys); *David H. Weinstein* admitted *pro hac vice* (*Kohn, Savett, Marion & Graf,* attorneys).

*Mary R. Hamill,* Dep. Atty. Gen., for defendants (*Irwin I. Kimmelman,* Atty. Gen. of N.J., attorney).

LASSER, P.J.T.C. (temporarily assigned).

This is an action in which plaintiffs challenge the constitutionality of the Counterpart Fee Act, *N.J.S.A.* 39:3–6. This act imposes a retaliatory fee or tax on trucks operating in New Jersey that are registered in one of the 18 states that impose a fee or tax on New Jersey registered trucks which New Jersey does not impose. Plaintiffs allege that the act violates the Commerce Clause, Art. I, § 8, cl. 3, and the Privileges and Immunities Clause, Art. IV, § 2, of the United States Constitution. There are two complaints involved, one brought by Private Truck Council of America, Inc. (hereinafter Private Truck) and the second brought by West Motor Freight, Inc. (hereinafter West). Private Truck and West are jointly referred to as plaintiffs. These two cases are now before the court on motions and cross-motions for summary judgment and have been consolidated for purposes of these motions.

Previous motions to certify a class were granted in the Private Truck case and denied in the West case. The Private Truck class is comprised of motor carriers engaged in interstate commerce in New Jersey whose trucks are registered in states against which New Jersey "retaliates" by levying a counterpart

fee. Motions for a preliminary injunction and an escrow fund for deposit of all taxes or fees paid by plaintiffs under the statute until the case is decided were denied in both cases. Private Truck has filed a tax refund claim pursuant to *N.J.S.A.* 54:39A–19 on behalf of the class. Plaintiffs seek attorneys' fees under 42 *U.S.C.* §§ 1983 and 1988.

At the oral argument of the motions for summary judgment plaintiffs moved the court to assume jurisdiction over an escrow fund established by New Jersey at the time the Pennsylvania axle tax was declared unconstitutional.[1] This motion was denied with the proviso that the fund would continue to be maintained by the State and plaintiffs and the court would be advised of any proposed change, at which time plaintiffs would have an opportunity to renew their motion.

These cases were instituted in the Superior Court and then transferred to the Tax Court. However, at the request of the parties, the cases were returned to the Superior Court because of concern expressed with respect to the jurisdiction of the Tax Court should the imposition in issue be held to be a fee and not a tax.

Generally, the 50 states impose two types of fees or taxes on interstate trucks operating within their borders—motor fuel taxes and registration fees. Many states impose what are referred to as "third structure" taxes in addition to the "first structure" motor fuel taxes and "second structure" registration fees. The Pennsylvania axle tax of $36 per axle is an example of a third structure tax. Third structure taxes or fees are imposed for the purpose of raising revenue for the maintenance and improvement of roads.

The Counterpart Fee Act imposes a retaliatory tax or fee (similar to the insurance company retaliatory tax) on trucks that use New Jersey highways and are registered in one of the

---

[1]*American Trucking Associations, Inc. v. Bloom,* 87 *Pa.Cmwlth.* 379, 487 A.2d 465 (Pa.Cmwlth.Ct.1985), appeal pending.

18 states that impose third structure taxes on trucks registered in New Jersey. It is the intent of the statute to encourage reciprocal agreements [2] among the 50 states in an effort to achieve uniform impositions on interstate motor carriers or to secure the elimination of third structure taxes and lessen the burden of taxation on interstate commerce. Out-of-state registered trucks do not pay registration fees to New Jersey. The counterpart fee is less than the New Jersey registration fee. The amount that out-of-state registered trucks pay to operate in New Jersey is thus less than New Jersey registered trucks pay to operate in New Jersey, unless registration fees paid by out-of-state truckers to their state of registry are also included.

New Jersey is one of seven states with similar statutes, but the Maine statute has been declared unconstitutional [3] and the New Hampshire statute has been repealed, reducing the number of states to five. Challenges to the constitutionality of third structure retaliatory acts are pending in all five states.

The Counterpart Fee Act reads as follows:

**When nonresident owner required to pay registration fee**

Except as otherwise provided by reciprocity agreement or arrangement entered into by the director or by a declaration issued by him, no motor vehicle or motor-drawn vehicle registered in another jurisdiction which requires the payment of a registration fee or fees or taxes of any other nature from an owner of a similar vehicle properly registered in this State for the operation of such vehicle on the highways of such other State, shall be operated on the highways of this State unless a fee is paid to the director, equal in amount to the fee or tax collected by the authorized official or body of such other jurisdiction for the operation on its highways of the motor vehicle or motor-drawn vehicle properly registered in this State. In the event that the fee or tax collected by such other jurisdiction is imposed for the registration of the vehicle therein, then in no case shall the fee paid to the director be less than the amount now or hereafter provided for by the laws of this State for the registration of a similar vehicle.

---

[2]Counsel for the Director states that there are six reciprocal agreements in effect as a result of this statute.

[3]*Private Truck Council of America v. Quinn,* 503 A.2d 214 (Me.Sup.Ct.1985) (slip op.).

> The Director shall from time to time promulgate such regulations as may be necessary for the effective enforcement of this section. [*N.J.S.A.* 39:3–6.]

"Director" in the statute refers to the Director of the Division of Motor Vehicles.

Plaintiffs contend that the Counterpart Fee Act discriminates on its face against interstate commerce on three levels. First, the act discriminates in favor of New Jersey registered trucks because trucks engaged in interstate commerce that are not registered in New Jersey must pay a tax or fee that New Jersey registered trucks are not required to pay. Second, the act discriminates among classes of interstate commerce because the counterpart fee must be paid only by trucks registered in 18 of the 50 states. Third, the act discriminates among trucks registered in the 18 states that impose third structure taxes because the counterpart fee varies depending on the amount of third structure tax imposed by the state of registry.

Defendant contends that the act has a legitimate purpose: to ease the burden on interstate commerce by encouraging the elimination of third structure taxes and to promote reciprocity. It argues that retaliatory taxation for this purpose has been approved in the case of the insurance premiums retaliatory tax and that since the purpose has been held to be acceptable for Equal Protection purposes, some discrimination is permissible under the Commerce Clause. It urges that the Commerce Clause test is thus substantial discrimination, not facial discrimination. It argues that the counterpart fee is a highway tax and should be grouped with registration and motor fuel taxes in considering whether it constitutes an unconstitutional burden on interstate commerce because other highway user taxes are complementary to the counterpart fees. Defendant contends that plaintiffs have not established that when all highway fees and taxes are taken into account, they pay more per vehicle mile traveled in New Jersey than do New Jersey registered vehicles.

Defendant also maintains that the constitutionality of the Counterpart Fee Act was upheld in *B & L Motor Freight, Inc.*

*v. Heymann,* 120 *N.J.Super.* 270 (Ch.Div.1972), aff'd o.b. 125 *N.J.Super.* 372 (App.Div.1973), certif. den., 64 *N.J.* 494 (1974), appeal dism. 419 *U.S.* 1042, 95 *S.Ct.* 613, 42 *L.Ed.*2d 636 (1974), reh'g den. 420 *U.S.* 913, 95 *S.Ct.* 837, 42 *L.Ed.*2d 845 (1975), and that this court is bound by the decision in that case.

## I. *The B & L Motor Freight case*

Plaintiffs contend that this court is not bound by *B & L* because: (1) the *B & L* court did not decide the issue of discrimination against interstate commerce; (2) United States Supreme Court decisions since *B & L* have made changes in the law governing state taxation of interstate commerce; [4] and (3) the court relied heavily on insurance industry cases, which are distinguishable because, by reason of the McCarran-Ferguson Act of 1945, 15 *U.S.C.A.* § 1011 *et seq.* (which grants to the states the right to regulate the interstate insurance industry) these cases arise under the Equal Protection Clause of the Fourteenth Amendment, not the Commerce Clause. *See Western and Southern Life Ins. Co. v. Bd. of Equalization,* 451 *U.S.* 648, 101 *S.Ct.* 2070, 68 *L.Ed.*2d 514 (1981).

The threshold determination is whether this court is bound by the *B & L Motor Freight* decision. This determination turns on two questions: 1) whether *B & L Motor Freight* deals with the specific issue presented by plaintiffs in this case, that is, whether the statute is unconstitutional because it discriminates against interstate commerce; and 2) if *B & L Motor Freight* does deal with this issue, whether the law governing state taxation of interstate commerce has changed since *B & L Motor Freight* was decided in 1972.

---

[4] *Western and Southern Life Ins. Co. v. State Bd. of Equalization,* 451 *U.S.* 648, 101 *S.Ct.* 2070, 68 *L.Ed.*2d 514 (1981); *Maryland v. Louisiana,* 451 *U.S.* 725, 101 *S.Ct.* 2114, 68 *L.Ed.*2d 576 (1981); *Complete Auto Transit, Inc. v. Brady,* 430 *U.S.* 274, 97 *S.Ct.* 1076, 51 *L.Ed.*2d 326 (1977); *Boston Stock Exchange v. State Tax Commission,* 429 *U.S.* 318, 97 *S.Ct.* 599, 50 *L.Ed.*2d 514 (1977), and *Great Atlantic & Pacific Tea Co. v. Cottrell,* 424 *U.S.* 366, 96 *S.Ct.* 923, 47 *L.Ed.*2d 55 (1976).

A. Did the *B & L Motor Freight* court decide the issue of discrimination against interstate commerce?

The main argument raised by plaintiffs in the instant case is that the Counterpart Fee Act discriminates against interstate commerce. In *B & L Motor Freight*, Judge Herbert quoted from the middle of a long paragraph in Justice Brandeis's opinion in *Clark v. Poor*, 274 *U.S.* 554, 47 *S.Ct.* 702, 71 *L.Ed.* 1199 (1927). The quote in *B & L* began with the words "There is no suggestion that the tax discriminates against interstate commerce." *B & L*, 120 *N.J.Super.* at 280. The court proceeded to evaluate the claim that the tax violates the Commerce Clause by considering whether the tax was excessive in amount relative to a fair contribution to the state for the privilege of using New Jersey roads. For this element of its decision the court relied in large part on *Capitol Greyhound Lines v. Brice*, 339 *U.S.* 542, 70 *S.Ct.* 806, 94 *L.Ed.* 1053 (1949).

The tax at issue in *Capitol Greyhound* was admittedly nondiscriminatory. Both interstate and intrastate common carriers were subject to a 2% tax on the fair market value of each carrier as a registration fee for the issuance of every original and subsequent title certificate. Since discrimination was not involved in the case, the Court based its decision on a different test, that is, whether the flat fee exceeded fair compensation to the state for the privilege of using the highways. *Capitol Greyhound*, 70 *S.Ct.* at 807, 94 *L.Ed.* at 1056.

The trial court in *B & L Motor Freight* also relied on *Safeway Trails, Inc. v. Furman*, 41 *N.J.* 467 (1964), appeal dism. 379 *U.S.* 14, 85 *S.Ct.* 144, 13 *L.Ed.*2d 84 (1964), which in turn relied on *Interstate Busses Corp. v. Blodgett*, 276 *U.S.* 245, 48 *S.Ct.* 230, 72 *L.Ed.* 551 (1927).

*Interstate Busses* involved a Connecticut tax of 1¢ for each mile traveled by a motor vehicle used in interstate commerce "as an excise on the use of the highway." The plaintiff alleged that the additional tax discriminated, in purpose and effect, against operators in interstate commerce. The Court held that

the tax was not discriminatory because it was complementary to a similar tax burden imposed on intrastate motor vehicles. The purpose of both was to compensate the State for use of the roads. The Court said that the plaintiff corporation paid a personal property tax on buses, license and registration fees for each vehicle and a 2¢ per gallon fuel tax, all of which were also paid by intrastate operators. The intrastate operators did not pay the mileage tax; however, they did pay an excise tax of 3% of their gross receipts less local taxes paid, and they were exempt from the 2¢ corporate income tax.

Holding that the two taxes were complementary, the *Interstate Busses* court stated that "appellant plainly does not establish discrimination by showing merely that the two statutes are different in form or adopt a different measure or method of assessment, or that it [appellant] is the subject of three kinds of taxes while intrastate carriers are subject only to two or one." *Interstate Busses,* 48 *S.Ct.* at 231, 72 *L.Ed.* at 554–555. The court concluded that the mileage tax was not a "substantially greater burden on appellant's interstate business than its correlative, the gross receipts tax on comparable intrastate businesses." *Id.* at 555, 48 *S.Ct.* at 231. In such a situation, where the taxes were found to be complementary, taxpayer would have to show that "in actual practice the tax of which it complains falls with disproportionate weight on it," *Ibid.,* in order to establish that the tax was discriminatory.

The *B & L Motor Freight* court made no further mention of the issue of discrimination against interstate commerce.[5] After

---

[5]The court said, 120 *N.J.Super.* at page 284–285, that:

If a plaintiff came forward with proof of discrimination between him and another member of the same class (i.e., another trucking company based in such plaintiff's state) he would be entitled apparently to have a recalculation made to eliminate the discrimination [citation omitted]; but there has been no such proof and this case has not been brought to correct any figures, but rather to seek a judgment that the entire statute is invalid.

This statement appears to refer to an Equal Protection argument, not a Commerce Clause argument. *See* 120 *N.J.Super.* at 283, in which the court

quoting from *Capitol Greyhound* that a tax "should be judged by its result, not its formula, and must stand unless proven to be unreasonable in amount for the privilege granted," 120 *N.J.Super.* at 281, the court held that the Counterpart Fee Act did not violate the Commerce Clause because it was neither "an excessive charge for the privilege of using our roads," *Id.* at 282, nor "in excess of a fair compensation for the privilege of using New Jersey's roads." [6] *Ibid.* The *B & L Motor Freight* court disposed of the Commerce Clause issue by utilizing not a discrimination test, but a test of whether the tax was "unreasonable in amount for the privilege granted." 120 *N.J.Super.* at 281. This test was later denominated the "fairly related" test in *Complete Auto Transit, Inc. v. Brady. See infra* at 623.

Discrimination is a fundamental Commerce Clause issue and the nature of the Counterpart Fee Act would lead one to assume that discrimination was an issue in the *B & L Motor Freight* case. The issue was probably argued, and it may have been considered by the court, but it was not referred to in the opinion except for the inclusion of the words from *Clark v. Poor* that "there is no suggestion that the tax discriminates against interstate commerce."

The issue of discrimination was squarely presented to the Appellate Division.[7] The Appellate Division, by affirming the

---

pointed out that "no plaintiff complains that New Jersey is treating him in a manner which differs from its treatment of a competitor from his own state."

[6] The court also sustained the tax against claims that it violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, constituted an unlawful delegation of legislative power, was void for vagueness and uncertainty and was an invalid retaliatory statute.

[7] In their brief to the Appellate Division, the *B & L* appellants stated that the trial court "dismissed plaintiffs' argument with the apparent proposition that, as to taxes levied upon interstate commerce, it is incumbent upon the challeng-

judgment of the Chancery Division "essentially for the reasons set forth in the opinion of Judge Herbert," 125 *N.J.Super.* at 373, apparently considered and rejected this prominent issue. The New Jersey Supreme Court denied certification. 64 *N.J.* 494 (1974). Its denial did not constitute a ruling on the merits. *West Point Island Civic Ass'n v. Dover Tp.,* 54 *N.J.* 339, 344 (1969).

The appellants appealed as of right to the United States Supreme Court and raised the issue of discrimination in their jurisdictional statement on appeal, as follows:

2. Whether a state statute, laying upon persons engaged in interstate commerce, charges and fees, which are discriminatory in application and amount, and which are in no reasonable fashion geared toward reimbursing the state for the provision of highway services, constitutes an unlawful and unreasonable burden upon the free flow of interstate commerce.

The United States Supreme Court dismissed the appeal for want of a substantial federal question (three justices dissenting) 419 *U.S.* 1042, 95 *S.Ct.* 613, 42 *L.Ed.*2d 636 (1974); and a

---

er to show the assessment to be *excessive in amount* and, failing that, the statute must be upheld ... for this purported rule of law, the court relied upon *Capitol Greyhound Lines v. Brice* ... and *Safeway Trails v. Furman,* above. Plaintiffs submit that the trial court misconstrued these holdings." The appellants distinguished *Safeway Trails* and *Capitol Greyhound* by pointing out that:

[f]irst of all, the counterpart levies are plainly discriminatory. Unlike the statutes challenged in the *Capitol* and *Safeway* cases, *N.J.S.A.* 39:3–6 *et seq.* imposes widely different and purposefully nonuniform taxes. Moreover, the taxes imposed patently discriminate against interstate commerce, or at least aspects thereof.... [The Counterpart Fee Act] creates, in effect, a separate mode and level of taxation of widely different types for vehicles from *each* of the several sister states.... The discriminatory nature of these imposts furthermore is emphasized by the avowed purpose of the enactment—to wrench financial benefits for the New Jersey trucking industry—which constitutes the most patent of discriminations against portions of interstate commerce in favor of local commerce. However, laudable may have been the purported goal of the legislature—to free interstate commerce ultimately from local taxes—the court cannot escape the conclusion that the cost exacted by New Jersey is in the form of blatant, and purposeful, discriminatory levies against interstate commerce. [Emphasis in original;

appellants' brief at 29–30 *passim.*]

petition for rehearing was denied. 420 *U.S.* 913, 95 *S.Ct.* 837, 42 *L.Ed.*2d 845 (1975).

According to Stern and Gressman, *Supreme Court Practice* (5 ed. 1978) § 5.18 at 377–378, "when the court feels that the decision below is correct and that no substantial question on the merits has been raised, it will ... dismiss an appeal from a state court 'for want of a substantial federal question.' " Such a summary disposition is the equivalent of an affirmance on the merits as to all issues posed in the jurisdictional statement accompanying the appellants' notice of appeal. *Mandel v. Bradley*, 432 *U.S.* 173, 97 *S.Ct.* 2238, 53 *L.Ed.*2d 199 (1977); *Hicks v. Miranda*, 422 *U.S.* 332, 95 *S.Ct.* 2281, 45 *L.Ed.*2d 223 (1975); *Ohio ex. rel. Eaton v. Price*, 360 *U.S.* 246, 79 *S.Ct.* 978, 3 *L.Ed.*2d 1200 (1959); 16 Wright, Miller, Cooper and Gressman, *Federal Practice and Procedure: Jurisdiction* § 4014 (1977). In deciding whether to summarily dismiss the appeal for want of a substantial federal question, the Supreme Court will only consider an issue raised in the jurisdictional statement if that issue was presented in the state court. *Id.*, § 327 at 219. It is clear that the appellants raised the question of discrimination in both application and amount before the Appellate Division of the Superior Court.

There is no escaping the conclusion that the Supreme Court considered the issue of discrimination and rejected it. Only if there have been dramatic, pertinent doctrinal developments in Commerce Clause jurisprudence since 1974 might this court avoid the *stare decisis* effect of the Supreme Court's summary dismissal of the appeal in *B & L Motor Freight. See Lecates v. Justice of Peace Court*, 637 *F.*2d 898 (3 Cir.1980).

### B. Has the law on discrimination against interstate commerce changed?

The validity of state taxes under the Commerce Clause is tested by a four-part test that was first formally expressed in *Maryland v. Louisiana*, supra, drawing on the criteria set

forth in *Complete Auto Transit, Inc. v. Brady, supra.* This test is:

[N]o state tax may be sustained unless the tax: (1) has a substantial nexus with the State; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the State. [101 *S.Ct.* at 2133, 68 *L.Ed.*2d at 600].

All four prongs of the test must be satisfied.

These four criteria were present in Commerce Clause jurisprudence at least as far back as *Memphis Natural Gas Co. v. Stone,* 335 *U.S.* 80, 68 *S.Ct.* 1475, 92 *L.Ed.* 1832 (1947). Justice Rutledge, in his concurring opinion, which was quoted with approval in *Complete Auto Transit,* 430 *U.S.* at 282, 97 *S.Ct.* at 1081, stated the following:

[I]t is enough for me to sustain the tax imposed in this case that it is one clearly within the state's power to lay insofar as any limitation of due process or "jurisdiction to tax" in that sense is concerned; it is nondiscriminatory, that is, places no greater burden upon interstate commerce than the state places upon competing intrastate commerce of like character; is duly apportioned, that is, does not undertake to tax any interstate activities carried on outside the state's borders; and cannot be repeated by any other state. [68 *S.Ct.* at 1483–1484, 92 *L.Ed.* at 1844–1845; footnotes omitted].

The only departure from prior law which occurred when *Complete Auto Transit, Inc. v. Brady* overruled *Spector Motor Service v. O'Connor,* 340 *U.S.* 602, 71 *S.Ct.* 508, 95 *L.Ed.* 573 (1951), was that the Supreme Court held that a tax on the privilege of engaging in interstate commerce was no longer *per se* unconstitutional, and that interstate commerce may constitutionally be made to pay its way as long as the four criteria of the test are satisfied.

It has always been the law that a state tax violates the Commerce Clause if it discriminates against interstate commerce. *See, e.g., Best & Co. v. Maxwell,* 311 *U.S.* 454, 61 *S.Ct.* 334, 85 *L.Ed.* 275 (1940); *Guy v. Baltimore,* 10 *Otto* 434, 100 *U.S.* 434, 25 *L.Ed.* 743 (1879). Additionally, the "complementary tax" test for discrimination has existed at least since *Interstate Busses* was decided in 1927. Plaintiffs urge that the decisions in *Western and Southern Life Insurance Co., Boston Stock Exchange* and *A & P v. Cottrell,* all *supra,* represent

a significant doctrinal development and clarification of the limitations that the Commerce Clause imposes on state taxation. None of these cases marks a specific change in the law governing state taxation of interstate commerce.

While it is true that the *A & P* opinion rejected retaliatory legislation as a means of accomplishing state regulatory objectives, that case did not deal with a state tax, and state taxes must be specifically analyzed under the four-part *Complete Auto* test. The McCarran-Ferguson Act of 1945, *supra*, removed state taxation of the interstate insurance industry from the purview of the Commerce Clause, and *Western and Southern* simply restated that fact. Finally, although *Boston Stock Exchange* did hold for the first time that a state may not constitutionally discriminate among similar classes of interstate commerce, that opinion merely expanded on the existing case law and did not depart from the usual mode of analyzing discriminatory taxes. None of these cases marks a change in the law dramatic enough to avoid the *stare decisis* effect of the United States Supreme Court's summary dismissal of the appeal in *B & L Motor Freight.*

I conclude that this court is bound by the prior determination in *B & L Motor Freight.*

## II. Privileges and Immunities

The Private Truck plaintiffs also allege that the Counterpart Fee Act, *N.J.S.A.* 39:3–6, violates the Privileges and Immunities Clause of the United States Constitution, Art. IV, § 2, cl. 1. The clause reads as follows: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." The Privileges and Immunities Clause prohibits a state from discriminating against nonresidents with respect to privileges and immunities which bear upon the vitality of the nation as a single entity. *Baldwin v. Fish & Game Commission*, 436 *U.S.* 371, 98 *S.Ct.* 1852, 56 *L.Ed.*2d 354 (1978). The right to pursue a livelihood free from economic discrimination is protected by the Privileges and Immunities

Clause. *Hicklin v. Orbeck*, 437 *U.S.* 518, 98 *S.Ct.* 2482, 57 *L.Ed.*2d 397 (1978). Corporations are not citizens within the meaning of the clause. *Asbury Hospital v. Cass County*, 326 *U.S.* 207, 66 *S.Ct.* 61, 90 *L.Ed.* 6 (1945); *Paul v. Virginia*, 8 *Wall.* 168, 75 *U.S.* 168, 19 *L.Ed.* 357 (1869).

■  Plaintiffs' argument must fail because the Counterpart Fee Act does not discriminate against *nonresidents* in favor of New Jersey *residents. Cf. Austin v. New Hampshire*, 420 *U.S.* 656, 95 *S.Ct.* 1191, 43 *L.Ed.*2d 530 (1975); *Salorio v. Glaser*, 82 *N.J.* 482, 502–504 (1980), *cert.* den. 449 *U.S.* 804, 101 *S.Ct.* 49, 66 *L.Ed.*2d 7 (1980), rev'd and remanded 85 *N.J.* 150 (1980), *cert.* den. 449 *U.S.* 874, 101 S.Ct. 215, 66 *L.Ed.*2d 94 (1980), rev'd after remand 93 *N.J.* 447 (1983), *cert.* den. 464 *U.S.* 993, 104 *S.Ct.* 486, 78 *L.Ed.*2d 682 (1983). The Counterpart Fee Act is imposed on trucks that are registered in one of the 18 third structure tax states. New Jersey-based carriers may also have to pay New Jersey counterpart fees if their trucks are registered in one of these 18 states. Since the act is triggered by a fact (place of registration of a particular truck) having nothing to do with the resident or non-resident status of the carrier, the act does not discriminate against nonresidents and thus is not invalid as a violation of plaintiffs' right to pursue a livelihood under the Privileges and Immunities Clause.

Plaintiffs' request for attorneys' fees under 42 *U.S.C.* §§ 1983 and 1988 is denied because that statute only allows attorneys' fees to the prevailing party.

Because I conclude that I am bound by the previous decision in *B & L Motor Freight*, it is unnecessary for me to decide whether the Counterpart Fee Act imposes a tax or a fee. For the same reason, I need not reach the remedies issues.

Defendant's motion for summary judgment is granted, and plaintiffs' summary judgment motions are denied. Defendant shall submit an Order in accordance with the five-day rule.